LAMB v. BOARD OF AUDITORS OF WAYNE COUNTY.

1. JUDGES—WHEN CIRCUIT JUDGE REGULARLY HOLDING COURT IN A COUNTY ENTITLING HIM TO EXTRA COMPENSATION PAID BY SAID COUNTY.

In view of article 7, § 8, of the Constitution, requiring each circuit judge to hold court in the county or counties within the circuit in which he is elected at least four times in each year, a circuit judge holding court in a

county outside of the circuit in which he was elected, on assignment of the presiding circuit judge, under authority conferred by Act No. 213, Pub. Acts 1915, is not "regularly" holding court therein, within the meaning of article 7, § 12, of the Constitution, and therefore is not entitled, upon a per diem basis, to the extra compensation paid by the county under authority of section 12 to the judges regularly holding court in said county, but said section requires that in those circuits in which the legislature has provided for the election of more than one circuit judge, all such judges of the circuit shall be paid such additional salary, if granted, at the same rate.[1]

2. EVIDENCE—JUDICIAL NOTICE—PRESIDING CIRCUIT JUDGE ACT.

The court takes judicial notice of the fact that the presiding circuit judge act (Act No. 213, Pub. Acts 1915, 3 Comp. Laws 1915, § 14546 et seq.) has given general satisfaction.[2]

3. COURTS—STATE NOT SINGLE JUDICIAL CIRCUIT.

The legislature, under authority of article 7, § 8, of the Constitution, by the presiding circuit judge act, has not made of the State one judicial district in which any or all of the circuit judges may be said to sit regularly in any and all circuits.[3]

McDONALD, J., dissenting.

Mandamus by Fred S. Lamb, judge of the 28th judicial circuit, against the board of auditors of Wayne county and the board of supervisors of Wayne county to determine the compensation of nonresident circuit judges sitting by assignment in the Wayne circuit. Submitted November 10, 1925. (Calendar No. 32,206.) Writ denied June 7, 1926.

*Miller, Baldwin & Boos,* for plaintiff.

*Andrew B. Dougherty,* Attorney General, *Robert M. Toms,* Prosecuting Attorney, and *John V. Brennan,* Assistant Prosecuting Attorney, for defendants.

*Andrew B. Dougherty,* Attorney General, and *James A. Greene,* Assistant Attorney General, *amici curiæ.*

---

[1]Judges, 33 C. J. § 72; [2]Evidence, 23 C. J. § 1947 (Anno); [3]Courts, 16 C. J. § 418.

CLARK, J.   This friendly suit is brought to determine the compensation of nonresident circuit judges, sitting in Wayne county on assignment of the presiding circuit judge.   The question is on section 12, art. 7, State Constitution of 1908:

"Each of the judges of the circuit courts shall receive a salary payable monthly.   In addition to the salary paid from the State treasury, each circuit judge may receive from any county in which he regularly holds court such additional salary as may be determined from time to time by the board of supervisors of the county.   In any county where such additional salary is granted it shall be paid at the same rate to all circuit judges regularly holding court therein,   *   *   *"

and particularly on the meaning of the word "regularly" as used in the section.   The annual salary of a circuit judge, paid by the State, is $5,000.   Act No. 143, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 12141).   Plaintiff is the circuit judge of the 28th circuit composed of the counties of Kalkaska, Missaukee, Wexford, and Benzie (3 Comp. Laws 1915, § 12110).   The third circuit is composed of the county of Wayne (3 Comp. Laws 1915, § 12085).   The board of supervisors of the county of Wayne, at the time in question, had granted to the circuit judges of that county an additional annual salary of $8,500.

The legislature in 1915 passed the presiding circuit judge act, effective August 24, 1915 (Act No. 213, Pub. Acts 1915 [3 Comp. Laws 1915, § 14546 *et seq.*]).   This act, after providing for the election by the circuit judges of the State of a presiding circuit judge, defined his power and duty:

"(14547) SEC. 2. The presiding circuit judge shall have full directory power over the matter of apportioning the work of the several circuits among the circuit judges of the State."

Plaintiff, by direction of the presiding circuit judge,

235—Mich.—7.

held court in Wayne county.   He requested of defendants that he be paid *per diem* for the time the additional salary so granted by the supervisors.   They refused.   We are asked in mandamus to compel payment.

Where does the plaintiff regularly hold court within the meaning of the section of the Constitution above quoted?   Clearly it must be the counties of his own circuit.

We quote section 8, art. 7, of the Constitution:

"The State shall be divided into judicial circuits in each of which there shall be elected one circuit judge. The legislature may provide by law for the election of more than one circuit judge in any judicial circuit. A circuit court shall be held at least four times in each year in every county organized for judicial purposes.   Each circuit judge shall hold court in the county or counties, within the circuit in which he is elected, and in other circuits as may be provided by law.   The legislature may by law arrange the various circuits into judicial districts, and provide for the manner of holding courts therein.   Circuits and districts may be created, altered or discontinued by law, but no such alteration or discontinuance shall have the effect to remove a judge from office."

This section requires that a circuit judge shall hold court in the county or counties within the circuit in which he is elected, and there must be at least four sittings or terms in each county in each year.   By this section we are committed to the principle that the people are entitled to the service of the judge whom they elect.

But what is the meaning of the second sentence of said section 12:

"In any county where such additional salary is granted it shall be paid at the same rate to all circuit judges regularly holding court therein."

Its meaning, in the present state of the law, is that in those circuits in which the legislature has provided

for the election of more than one circuit judge (art. 7, § 8), all such circuit judges of the circuit shall be paid such additional salary, if granted, at the same rate.    It has perhaps a further meaning, now potential merely.    Said section 8 provides that the legislature may arrange the circuits into judicial districts. If the legislature should create of two or more circuits a judicial district and provide for rotation of the circuit judges therein throughout the district and, perhaps, for the election of such judges at large in the district, and that such judges should hold court regularly in all the counties of the district, then all such circuit judges might be entitled to additional salary at the same rate if granted by any county of the district.

But the legislature has not created such judicial districts.    It passed the presiding circuit judge act, which, we take notice, has given general satisfaction. As administered, it has done much toward expediting the business of the courts.    Its chief feature (apart from aid in emergencies or exigencies) is in affording relief, in a prompt and orderly manner, to circuits where business is congested, as it quite constantly is in the great and growing industrial center within Wayne county.    It is well that a circuit judge in a circuit where business happens to be light may relieve in another circuit where business is heavy.

It is well to note, too, the statute (3 Comp. Laws 1915, § 12144) provided that in certain cases the governor may designate a circuit judge to hold court temporarily in a circuit other than his own, and the statute (3 Comp. Laws 1915, § 12307) providing among other things that circuit judges may hold court for each other.    But it cannot be said that a circuit judge, sitting in a county outside the circuit in which he was elected, by occasional exchange and agreement with another circuit judge, or by direction of the pre-

siding circuit judge to relieve against congestion, emergency, exigency, or otherwise, is "regularly holding court" in such county. It is urged that "regularly" has various shades of meaning, defendants, in effect, contending that "regularly holding court" means to hold it at fixed and certain intervals, regular in point of time, and plaintiff stating that it means "following the rule; according to rule or law; observing the prescribed course," and that such possible difference in meaning presents an ambiguity in the quoted language of the Constitution permitting resort to the Constitutional Debates that we may be enlightened.

If that be granted, the Debates confirm what we have said. The delegates, in building the section in question (art. 7, § 12), had in mind the possible and then probable arranging by the legislature of the various circuits into judicial districts (art. 7, § 8), and sought to provide for equal distribution to the judges regularly holding court in such district of any additional salary so granted by any board of supervisors in the district. Beecher's Ann. Const. of 1908, p. 92. That the presiding circuit judge act was to follow a few years later, no one seems to have anticipated.

We quote from the Debates:

"*Mr. Flannigan:* It is not at all likely, at least we think it is not at all likely, that the county of Washtenaw, or any other county bordering on the county of Wayne, would be attached to the county of Wayne in a district, but even if that should occur at the hands of the legislature the result would be that the circuit judge elected by the county of Washtenaw in his turn would be obliged to hold court in Wayne county, and the circuit judge of Wayne in his turn would be obliged to hold court in the county of Washtenaw. The circuit judge of the county of Washtenaw would render to the county of Wayne precisely the same service as the circuit judge elected in the county of Wayne. There is no reason why, in the event that

the circuit judge of the county of Washtenaw performs that service for the county of Wayne, he should not receive from the county of Wayne the same compensation as the county of Wayne judge." Debates of the Const. Conv. p. 1018.

"*Mr. Knowles:* If you will refer to the old Constitution, you will find that this section reads, 'And the circuit judge or judges of such circuits, in addition to the salary provided by the Constitution, shall receive from their respective counties such additional salary as may from time to time be fixed and determined by the board of supervisors of said county.'

"This is arranged at present so that where there are several counties in one circuit each county in that circuit may pay that judge something. The convention this morning has decided that it would permit the legislature to adopt a circulating system of judges; this circulating system of judges is supposed to be so arranged by the legislature that judges receiving similar salaries probably could be grouped together. For instance, Detroit judges could be grouped in one district. In recognizing this fact the committee on arrangement and phraseology have said 'each circuit judge may receive from any county in which he regularly holds court.' Now he will regularly hold court in perhaps as many, if not more counties from which he is elected than he holds court in counties from which he is not elected. In other words, the circuit judge will be elected in his circuit, but he will hold court all over this district in which his circuit court is situated. He may be one of four judges, or may be a judge from a circuit court that circulates over a district that is large enough to compose four circuit courts, therefore, in such a case he cannot receive any compensation for three-quarters of his work, because he would be working three-fourths of his time in other circuits, and according to the amendment those other counties could not pay him anything for his services." Debates of the Const. Conv. p. 1018.

"*Mr. Hally:* I think it is a rank piece of injustice to have one county raise the salary of its judges because it sees fit to do so, and then afterwards have the legislature split that salary with the judges of several other counties, and that possibility is open to

the legislature in this proposal here. The gentleman from Wayne, Mr. Campbell, in speaking of this, pointed out the fact that in the county of Wayne there are six judges each receiving six thousand dollars a year. I am informed that the surrounding circuits with which it would be circuited, pay two thousand five hundred dollars." * * * Debates of the Const. Conv. p. 1017.

It was proposed by Mr. Snow that the sentence "The legislature may by law arrange the various circuits into judicial districts, etc.," be stricken out, to which Mr. Broomfield replied:

"Mr. President, I sincerely hope that the amendment offered by the gentleman from Saginaw (Mr. Snow) will not prevail. The purpose of the language which the gentleman from Saginaw (Mr. Snow) desires to have stricken from this proposal is to make it permissive upon the part of the legislature to establish in the State of Michigan the circulating system of circuit judges. I desire to call the attention of the convention to the fact that the language of this proposal does not definitely fix upon the State of Michigan that system. It does not make the circulating or rotating system mandatory, it simply makes that system permissive. I believe that is a very wise provision. There is a widespread demand all over this State from the members of the bar and among the circuit judges for the establishment of the circulating system of judges. The reasons for that demand must be manifest. There are circuits in this State where the circuit judges work about one day in a week. That is not altogether their fault, it is because of the fact that their circuit is so small that there is not sufficient business to keep the judge busy. Side by side with that circuit there may be a circuit where the judge is overworked; who has more business than he can attend to. Now, if the circulating system of judges were in vogue, if it were possible for the legislature to arrange three circuits, we will say, into a group, and provide that the judges in that circuit might rotate, the evil, or injustice would be corrected. There are various other defects in our present system that would be corrected by the establishment of the

circulating system of judges. I sincerely hope, gentlemen of the convention, that this language will be retained in this provision, and that it will be at least made permissive on the part of the legislature to establish that reform for which there is such a widespread demand in the State of Michigan today.        I want to say further that as I understand it the association of circuit judges of this State is almost unanimously in favor of this system." Debates of the Const. Con. pp. 1014, 1015.

And Mr. H. M. Campbell said:

"Now, if the Wayne circuit was included in two or three other circuits, in the first place it would throw the whole system into confusion.        In the second place there would be a general demand to equalize the salaries of the judges throughout the several counties which would be included in that circuit; the result probably would be that the salaries of all would be reduced because otherwise to make it fair the salaries of the judges of the other circuits would have to be raised to an amount equal to that now paid to the circuit judges by Wayne county.        I think all would admit in the other circuits where the business is not heavy and the responsibility is not as great, that to raise the salaries of the judges in Washtenaw, Macomb and Monroe to six thousand dollars a year would be to raise them too much.        I think where such a result may follow that it is unwise to provide a system of that kind.        It would probably result in similar inequalities, perhaps not to the same degree, all over the State.        If one circuit has little business and another circuit has more business than the judge can attend to, it is very easy to provide by law for the judge in the circuit which has the lesser amount of business to sit in the other circuit and give relief in that way.        It does not seem to me to be wise to incorporate in our system so radical a change as this, and I hope the amendment will prevail." Debates of the Const. Conv. p. 1015.

"The secretary then read clause seven as follows:

" 'Each circuit judge, in addition to the salary paid from the State treasury, may receive from his respective counties such

additional salary as may from time to time be fixed by the boards of supervisors of said counties.'

"*Mr. Chairman:* Are there any amendments to the seventh clause?

"*Mr. Flannigan:* Mr. Chairman, I have a substitute which I desire to submit for that clause.

"The secretary read the substitute as follows:

"Amend clause seven of file No. 162 by adding after the word 'counties' in the fourteenth line, as follows:

"'In case of the arrangement of the various circuits into counties or districts, and in all cases where there shall be more than one circuit judge in any judicial district, any county in any such group, district or circuit electing to pay additional salary hereunder, shall pay equally to each circuit judge of such group, district or circuit.'

"*Mr. Flannigan:* The object of that, Mr. Chairman, is to prevent the board of supervisors of any specified county from paying more to one circuit judge than to another."    Debates of the Const. Conv. p. 707.

"*Mr. Heckert:* Mr. Chairman, I think the amendment offered by Mr. Flannigan should be adopted, for the reason that one county in a circuit or group of circuits would not be likely to appropriate money to the salary of a circuit judge, or to all of the circuit judges in a group, unless the other counties did it, and I think the adoption of this amendment would prevent any county from making an appropriation toward the increase of a circuit judge's salary unless all the counties within the group would do the same thing."    Debates of the Const. Conv. p. 708.

"*Mr. Flannigan:* Mr. Chairman, there has been considerable discussion as to whether or not the county should be permitted to pay extra compensation. That question is not before the committee. The question before the committee is on the amendment offered by myself.    The purpose of that amendment is this: to obligate the board of supervisors of any county electing to pay extra compensation, to treat alike every circuit judge who is compelled by law to hold court in such county.    If we have a county with two circuit judges in it, the board of supervisors of that county should not be allowed to pay a thousand dollars extra

compensation to one man and five hundred to another. If a circuit judge residing in a county having a small volume of court business and each county is unable to pay a large compensation, that judge, being compelled by the arrangement of the legislature under this provision to hold court in a larger county, and does as much work in the larger county as the judge residing in the larger county, he ought to be paid equally with the other judge; and I hope that this amendment will prevail." Debates of the Const. Conv. p. 709.

That the legislature, under authority of section 8, art. 7, Const., by the presiding circuit judge act, made of the State one judicial district in which any or all of the circuit judges may be said to sit regularly in any and all circuits is not tenable. If the State is now one judicial district, then every circuit judge sits regularly in all counties of the State, and any additional salary voted by any board of supervisors inures equally to all circuit judges of the State. The Constitution affords no basis for the claim of *per diem* compensation. If Wayne and Washtenaw had been placed in one judicial district and rotation of judges within the district had been provided for so that all circuit judges of the district were required to sit regularly in both counties, can it be that a Washtenaw judge while sitting regularly in Wayne would be entitled to only a *per diem* allowance of the extra compensation? If so, while a Wayne judge was sitting in Washtenaw would he be deprived *per diem* of the extra compensation voted in Wayne? The Constitution answers these questions plainly in the negative.

If plaintiff, while sitting in Wayne, is entitled to a *per diem* allowance of the extra compensation voted in Wayne on the equitable argument that when he is doing the same work done by a Wayne judge he should receive the same pay, then, what is the rule when a Wayne judge holds court in the plaintiff's circuit?

Does he lose *per diem* the extra compensation? Or does the rule work only one way? If a Wayne judge, where the extra compensation is $8,500, hold court in another circuit where the extra compensation is $6,500, may he have the allowance in both circuits? If not, which may he have? These problems arise only where a tortured construction of the plain language of the Constitution is attempted.

We find it unnecessary to consider statutes relating to payment to a circuit judge of expenses when sitting or acting officially without his circuit or in a county other than that in which he resides. We conclude that plaintiff, circuit judge of the 28th circuit, was not one regularly holding court in the 3d circuit, within the meaning of said section 12, art. 7, State Constitution.

The writ is denied. No costs.

BIRD, C. J., and SHARPE, STEERE, and FELLOWS, JJ., concurred with CLARK, J.

WIEST, J. (*concurring*). Upon mature reflection I am persuaded that Mr. Justice CLARK has reached the right conclusion.

The provision in the Constitution accomplishes two purposes: (1) permits each county in a circuit to grant additional salary; (2) requires the additional salary to be paid to all judges of such circuit. At first I was inclined to the view that the provision requires the additional salary to be paid to all circuit judges, even though but temporarily holding court in a county where awarded, but found that, in order to so hold would require dropping the word "regularly" and that must not be done. Of course, the provision looks forward to possible changes, such as compulsory rotation of judges, but, whatever the future purposes it may serve, it seems clear the provision was not intended to award additional salary to a judge of one circuit temporarily holding court in another circuit

under existing law, whether by exchange or designation of the presiding circuit judge.

I concur in the result reached by Mr. Justice CLARK.

McDONALD, J. (*dissenting*).     I cannot agree with Mr. Justice CLARK in the conclusion which he has reached in this case.

The question involves the construction of the following section of the Constitution:

"Each of the judges of the circuit courts shall receive a salary payable monthly.     In addition to the salary paid from the State treasury, each circuit judge may receive from any county in which he regularly holds court such additional salary as may be determined from time to time by the board of supervisors of the county.     In any county where such additional salary is granted it shall be paid at the same rate to all circuit judges regularly holding court therein."     Article 7, § 12.

The controversy arises over the meaning of "regularly holding court."     It is conceded that regularly has more than one meaning.     It may mean what the plaintiff claims it means, "by authority of law."     It may mean what the defendants claim it means, "continuously," "regular in point of time," "at fixed and certain intervals."     The question is not what it ordinarily means, not what the dictionaries say it means, but what meaning it has as used in this section of the Constitution.     What did the constitutional convention intend it to mean?     To determine this we must call to our aid the proceedings of that convention, and we must also read and consider the section in question with reference to other provisions of the Constitution in the same article.

Both the Constitutional Debates and section 8, article 7, show that the convention had before it the matter of providing for a change in the system of holding court in the judicial circuits of the State.     The idea

was to equalize the work.      It was well known that in some circuits the work was very light, and that in others it was very heavy.      To enable the legislature to provide a system for a more equal distribution of the work, section 8 was adopted.      The applicable part reads as follows:

"Each circuit judge shall hold court in the county or counties within the circuit in which he is elected, and in other circuits as may be provided by law.      The legislature may by law arrange the various circuits into judicial districts, and provide for the manner of holding court therein."

Now, having provided for equalizing the work, the next step was to equalize the salaries.      With this in mind, Mr. Richard C. Flannigan, a member of the convention, proposed an amendment to the effect that if the plan suggested in section 8 should be adopted by the legislature, the additional salaries authorized by the boards of supervisors should be paid equally to each circuit judge holding court in the district or new circuit.      The debate which followed shows clearly that every member of the convention understood that the purpose was to equalize the salaries of the circuit judges.      The amendment received the approval of the convention and was referred to the committee on arrangement and phraseology, to be put in legal form. It came out of that committee clothed in the following language, which is now the last sentence of section 12:

"In any county where such additional salary is granted it shall be paid at the same rate to all circuit judges regularly holding court therein."

Justice CLARK and I are not in disagreement as to the purpose of this provision of the Constitution.      We disagree only as to its application under the present law.      It is evidently true that it was proposed by the convention in anticipation that the legislature would district or re-circuit the judicial circuits of the State.

But if the legislature should provide some other system which would accomplish the same purpose, the provision for equalizing the salaries would be just as necessary. The constitutional convention did not undertake to dictate to the legislature the particulars of any plan or system. It just suggested a plan. Whatever authority it conferred was permissive only. Its purpose was to authorize the legislature to provide some system to more evenly distribute the work. It did not leave to the legislature the matter of equalizing the salaries. That was taken care of in the constitutional provision in question. It would seem not unreasonable to say that, if the legislature, in carrying out the purpose of the constitutional mandate, compelled a circuit judge to leave the circuit in which he was elected, and to hold court in some distant part of the State, where the local judges were receiving a much larger salary than he received in his home circuit, when he was thus compelled by law to do the same work that they were doing, he should receive the same salary. The theory of the constitutional provision is that all judges should be treated alike when doing the same work. Mr. Flannigan thus expressed it in the convention debates:

"The purpose of the amendment is this: To obligate the board of supervisors of any county electing to pay extra compensation, to treat alike every circuit judge who is compelled by law to hold court in such county." Debates of Const. Conv. p. 709.

Following the adoption of the constitutional amendments, the legislature provided a system for equalizing the work. There were obvious difficulties in the way of districting and re-circuiting the State. So it adopted a different system, but one which accomplished the constitutional purpose. It created the office of presiding circuit judge and gave him, "Full directory power over the matter of apportioning the

work of the several circuits among the circuit judges of the State."

It is as though the legislature had said, "we will consider the State as one great judicial circuit, we will create a presiding circuit judge, with power to apportion all the judicial work and direct the circuit judges where they shall hold court." Can it be said with any degree of reason that, if under this act judicial work in the Wayne circuit was apportioned to Judge Lamb, he would not be regularly holding court there? Since this statute, holding court in other circuits than that in which he was elected is a part of the regular duties of the circuit judge. The work in his own circuit is to be apportioned by the presiding circuit judge. Under this law, Judge Lamb or any other circuit judge can be compelled to hold court in the Wayne circuit three-fourths of his time, and if we give the constitutional provision the construction which the defendants contend for, while doing the same work as the local judges, he would be receiving $8,500 less salary. It was this unjust inequality in salaries that the members of the constitutional convention anticipated, and which they sought to avoid by the amendment contained in section 12. It seems to me to be beyond question that where a circuit judge is doing work apportioned to him by the law, whether in his own circuit or in any other, he is regularly holding court there. It is taking an entirely too narrow and technical a view of the matter to say that the constitutional provision in question is to be without force and effect, or is to fail in its purpose merely because the legislature did not district or re-circuit the judicial circuits of the State.

The constitutional provisions which we have been considering were intended to accomplish two objects, *first*, to equalize the work of the circuit judges, and, *second*, to equalize their salaries. The first has been

accomplished by the legislature in creating a presiding circuit judge and empowering him to apportion the work of all the judicial circuits of the State; the second will have been accomplished if we hold to the reasonable construction that every circuit judge is regularly holding court whenever and wherever he is doing the judicial work apportioned to him under authority of the law.

Judge Lamb was lawfully apportioned judicial work in the Wayne circuit court.    He was regularly holding court there, performing the same services as the local judges were performing, and was entitled to the same compensation.

The writ of mandamus should issue.

Justice MOORE took no part in this decision.