# JUNE TERM, 1958.

*In re* HUFF.

1. EVIDENCE—JUDICIAL NOTICE—COURT FILES—ASSIGNMENT OF CIR-
   CUIT JUDGES TO OTHER CIRCUITS.
   
   The Supreme Court takes judicial notice of the files in the office
   of the court administrator relative to assignment of circuit
   judges to serve in circuits other than those in which they were
   elected.

2. SAME—JUDICIAL NOTICE—CIRCUIT COURTS—ACTION IN OPEN COURT.
   
   The Supreme Court takes judicial notice of occurrences in open
   court in a circuit court relative to compliance with the Supreme
   Court's orders assigning circuit judges to serve in circuits
   other than those in which they were elected.

3. CONTEMPT—SHOW CAUSE ORDER—ISSUANCE—JUDICIAL NOTICE—
   ATTACHMENT OF AFFIDAVIT BEFORE SERVICE ON DEFENDANT.
   
   Issuance of order to circuit judge to show cause why he should

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur, Evidence §§ 78, 86.
[2] 20 Am Jur, Evidence § 83.
[3-6] 12 Am Jur, Contempt § 69.
[7] 12 Am Jur, Contempt § 24.
   30A Am Jur, Judges §§ 31, 237, 242.
[8] 30A Am Jur, Judges § 242.
[10] 12 Am Jur, Contempt § 24.
[11, 13, 14] 12 Am Jur, Contempt § 40.
[12] 12 Am Jur, Contempt § 4.
[15] 14 Am Jur, Courts § 171.
[16] 30A Am Jur, Judges § 237 *et seq.*
[18] 14 Am Jur, Courts § 264.
[19] 14 Am Jur, Courts § 265.
[20] 14 Am Jur, Courts § 266.
[21] 14 Am Jur, Courts § 271.
[22] 30A Am Jur, Judges § 237 *et seq.*
[23] 30A Am Jur, Judges § 242.
[24] 42 Am Jur, Public Officers § 9.
[25] 12 Am Jur, Contempt § 61 *et seq.*

not be adjudged guilty of contempt for failure to serve in circuit other than that in which he was elected and to permit a visiting circuit judge to serve as presiding circuit judge while he was away, as required by order of the Supreme Court, had ample foundation in judicially-noticed letter from defendant that he intended to disregard the duly-issued assignment and of the judicially-noticed occurrence in open court of such circuit whereby defendant continued as presiding judge and declined to permit the visiting judge to function as presiding circuit judge, the attachment of a supporting affidavit by such visiting circuit judge before service of the show-cause order upon defendant constituting full observance of procedural due process, since he was thereby apprised of the nature and substance of the disobedience charged against him so as to be enabled to prepare his defense to be presented 4 days later.

4. SAME—WAIVER OF IRREGULARITIES—VOLUNTARY APPEARANCE.
    The voluntary appearance in Supreme Court in response to that court's show cause order in a contempt proceeding waives all irregularities in the initiation of the proceeding.

5. SAME—COURT RULES—NOTICE OF HEARING ON PETITION.
    Provision of court rule entitling the attorney for an opposite party to notice of hearing of motions and petitions of at least 4 days does not apply to a show cause order of the Supreme Court, issued *sua sponte*, in contempt proceedings against a circuit judge, hence, he was not entitled to more time to prepare his defense than allowed by the show cause order (Court Rule No 10, § 2 [1945]).

6. SAME—SHOW CAUSE ORDER—TIME.
    Time allowed in show cause order in contempt proceedings against circuit judge, consisting of 3 or 4 days available for the purpose of enabling him and his counsel to explore and present the relevant law, *held*, ample, where there was no issue of fact involved and no necessity for seeking witnesses or evidence to refute showing of disobedience to the order of the Supreme Court to serve as circuit judge in a circuit other than the one in which he had been elected and to permit a visiting circuit judge to serve as presiding circuit judge while defendant was away (CL 1948, §§ 605.3, 605.5).

7. SAME—CIRCUIT JUDGES—ASSIGNMENT FOR SERVICE ELSEWHERE—VISITING JUDGE.
    Defendant circuit judge was properly found guilty of contempt of the Supreme Court by failure to comply with latter's order to him to serve as circuit judge in a specified circuit

other than the one in which he had been elected and with interfering with another circuit judge who had been ordered to serve as presiding circuit judge during period of defendant's absence, where defendant not only declined to serve elsewhere upon receipt of order of assignment or show cause order, but failed so to serve at any time before adjudication of contempt several days later, and in open court at first sought to obstruct the visiting judge from assuming duties of presiding judge in defendant's circuit.

8. COURTS—CIRCUIT COURTS—CONSTITUTIONAL LAW—STATUTES.

The right of the people of a judicial circuit to the service of a judge whom they have elected is subject to express and distinct limitations and qualifications provided for by the Constitution and statutes (Const 1908, art 7, § 8; CL 1948, §§ 602.61, 691.212; CLS 1956, § 692.701 et seq.).

9. SAME—SUPREME COURT.

An inferior court may not pass upon and hold invalid the determinations of the Supreme Court.

10. SAME—SUPREME COURT—DISOBEDIENCE OF ORDERS—CONTEMPT.

An order of the Supreme Court, even though its propriety or validity be questioned, should· be obeyed until it is vacated and until it is vacated the Supreme Court has power to punish disobedience thereof as for contempt.

11. CONTEMPT—COURTS—COMMON LAW—STATUTES.

Courts have inherent power to adjudge and punish for contempt to the full extent that it existed in the courts of England at the common law, independent of, as well as by reason of, statute that is merely declaratory and in 'affirmation of the common law, the determination of such issue not being for a jury but for the court (CL 1948, § 605.1 et seq.).

12. SAME—COMPLIANCE WITH ORDER OF THE COURT—CONSTRUCTIVE CONTEMPT.

The inherent power of a court to punish for contempt extends not only to contempt committed in the presence of the court, but also to constructive contempt arising from refusal of defendant to comply with an order of the court.

13. SAME—POWER TO PUNISH—STATUTES—COURTS.

The inherent judicial power of constitutional courts to punish for contempt cannot be limited or taken away by act of the legislature and is not dependent on legislative provision for its validity or procedures to effectuate it.

14. SAME—POWER TO PUNISH—DUE PROCESS.

The inherent power of a court to punish summarily for contempt for refusal to obey a valid court order is not a denial of due process, where the adjudication is made in the course of proceedings in which defendant was duly informed of the charged disobedience, had reasonable time to prepare his defense and persisted in refusal to obey after ample opportunity to purge himself of the contempt charged.

15. SAME—SUPREME COURT—JURISDICTION.

The Supreme Court has jurisdiction to adjudge that its order has been violated in such a way as to subject the violator to punishment for contempt (Const 1908, art 7, § 4).

16. COURTS—ASSIGNMENT OF CIRCUIT JUDGES TO OTHER CIRCUITS.

The Supreme Court has constitutional and statutory power to assign judges from their own circuit to another in the interests of sound judicial administration (Const 1908, art 7, §§ 4, 8; CL 1948, §§ 602.61, 691.212; CLS 1956, § 692.701 *et seq.*).

17. SAME—ASSIGNMENT OF CIRCUIT JUDGES—SUPREME COURT.

An order of the Supreme Court assigning defendant circuit judge to another circuit and a visiting circuit judge to function as presiding judge in defendant's circuit was clearly within the power of the Supreme Court (Const 1908, art 7, §§ 4, 8; CL 1948, §§ 602.61, 691.212; CLS 1956, § 692.701 *et seq.*).

18. SAME—SUPERVISORY POWER OF SUPREME COURT—CIRCUIT COURTS.

The supervisory power of the Supreme Court extends over the circuit courts and cannot be restricted or removed by legislative action (Const 1908, art 7, § 4).

19. SAME—SUPERINTENDING CONTROL OVER INFERIOR COURTS BY SUPREME COURT.

The Supreme Court's power of general superintending control over all inferior courts is an extraordinary power, is not hampered by specific rules or means for its exercise and is unlimited, being bounded only by the exigencies which call for its exercise (Const 1908, art 7, § 4).

20. SAME—SUPERINTENDING CONTROL OF COURTS.

The general superintending control conferred upon the Supreme Court by the Constitution is a power that is separate, independent and distinct from its other original jurisdiction and appellate powers, its purpose being to keep the courts themselves within bounds and to insure the harmonious working of the judicial system (Const 1908, art 7, § 4).

21. SAME—SUPERINTENDING CONTROL OF COURTS BY SUPREME COURT—
ASSIGNMENT OF CIRCUIT JUDGES TO OTHER CIRCUITS.

The general superintending control over inferior courts vested
in the Supreme Court includes the power to assign judges from
their own circuit to another in such manner and to such extent
as to the Supreme Court shall seem appropriate and neces-
sary in order to improve the administration of justice; a
power exercisable by the Supreme Court without need for im-
plementing legislation (Const 1908, art 7, § 4).

22. JUDGES—ASSIGNMENT TO OTHER CIRCUITS—SUPREME COURT.

Defendant circuit judge had the duty to serve as a judge in the
circuit to which he was assigned by duly-authorized orders of
the Supreme Court and the latter had power to compel him
so to serve (Const 1908, art 7, § 8; PA 1952, No 269, as
amended by PA 1954, No 162).

23. COURTS—ASSIGNMENT TO OTHER CIRCUITS—CONSTITUTIONAL LAW.

The exercise of the power of the Supreme Court to assign a
circuit judge to serve in a circuit other than that in which he
was elected does not constitute a violation of a right protected
by the Constitution of the State or of the United States.

24. OFFICERS—CONTRACTS—ELECTION TO PUBLIC OFFICE.

One does not have a contractual right to the public office to which
he has been elected.

25. COURTS—JUDGES—ASSIGNMENT TO OTHER CIRCUITS—CONTEMPT.

Circuit judge, under record presented, was properly found guilty
of contempt of the Supreme Court by willfully disobeying its
order to him to serve in another circuit and in interfering with
a visiting circuit judge who had been ordered to function as
presiding circuit judge in defendant's circuit and the Supreme
Court had the power to require him to pay $250 to the clerk
of the Supreme Court and to observe the further order of the
Supreme Court to serve as judge in a circuit other than the one
in which he had been elected (Const 1908, art 7, §§ 4, 8; CL
1948, §§ 602.61, 691.212; CLS 1956, § 692.701 et seq.).

Original proceedings in contempt against Eugene
Snow Huff, circuit judge of the tenth judicial cir-
cuit, for his failure to comply with order of the Su-
preme Court to serve in the third judicial circuit
and for interfering with assignment of visiting judge
to the tenth judicial circuit assigned for the purpose

of expediting the work of the court in that circuit. Citation issued *sua sponte* May 12, 1958. Adjudication of contempt May 16, 1958. (Calendar No. 47,-795.) Opinion filed June 5, 1958.

*Robert J. Curry,* for defendant.

DETHMERS, C. J. For the first time in Michigan's judicial history, it has become necessary to cite one of her circuit judges before this Court for contumacious disregard and willful and flagrant disobedience of its lawfully entered order. A proper regard for understanding by the bench and bar and the public generally of the authority under which this Court moved and the reasons which impelled it to do so requires their announcement through formal opinion.

On April 28, 1958, the Chief Justice, the court administrator and the defendant, Circuit Judge Eugene Snow Huff, then presiding judge of the tenth judicial circuit of Michigan, considered together the unsatisfactory condition of the dockets in the tenth circuit and agreed upon specific corrective measures. In conformity therewith, and at the direction of the Chief Justice, the court administrator, on that date, assigned defendant to serve as judge in the third judicial circuit, commencing May 12th, and continuing until June 12, 1958, and assigned Circuit Judge Timothy C. Quinn, of the fortieth judicial circuit of Michigan, to serve during the mentioned period, hereinafter referred to as the month, as presiding judge in the tenth circuit. On May 8, 1958, defendant sent the court administrator a letter in which he acknowledged the mentioned agreement and consequent assignments but stated that he would not accept the assignment to the third circuit and intended to remain as presiding judge of the tenth circuit and hear cases there during the month. On

May 9, 1958, this Court entered a formal order approving the assignments, directing defendant to serve as judge in the third circuit and Judge Quinn to serve as presiding judge in the tenth circuit in accord therewith, and ordering the assignment clerk of the tenth circuit to assign cases and perform the functions and duties of his office during the month under and at the direction and control of Judge Quinn as acting presiding judge of the tenth circuit. On that date defendant was informed that this Court had so determined.

At the opening of Court on May 12, 1958, Judge Quinn appeared in the courtroom in the tenth circuit customarily presided over by defendant and declared that he was reporting for service and ready to assume 'the duties of presiding judge of the tenth circuit for the month. Defendant thereupon made a statement, entered on the record, in open court, that he was continuing as presiding judge of the tenth circuit, that as such he would assign cases for Judge Quinn to hear, and that the assignment clerk would be required to continue to take orders from defendant as presiding judge and not from Judge Quinn.

Being apprised of defendant's refusal to comply with the assignments of the court administrator, this Court on May 12, 1958, caused its mentioned order of May 9th to be served upon defendant, Judge Quinn, and the assignment clerk. Thereupon, and on that same day, defendant announced in open court that he would continue to serve as presiding judge of the tenth circuit during the month. He declined to permit Judge Quinn to serve as such and failed and refused to go and to serve as judge in the third judicial circuit.

Having taken judicial notice of the files in the office of the court administrator and particularly of the mentioned May 8th letter therein from defend-

ant, stating that he declined to accept the assignment to the third circuit, and having been directly informed by Judge Quinn and having taken judicial notice of the occurrences of May 12th in open court in the tenth circuit, namely, defendant's openly-announced refusal and failure to comply with the court administrator's assignments and the order of this Court and his willful disobedience thereof, this Court, on that day, on its own motion, entered a show cause order, to which, after issuance but before service on defendant, the affidavit of Judge Quinn was attached stating the above facts constituting defendant's defiance and disobedience of the court administrator's assignments and this Court's May 9th order, after which said order to show cause was, on that same day, served upon defendant and a copy thereof with copy of said affidavit attached delivered to him, requiring him to appear personally before this Court on May 16th to show cause, if any there was, why he should not be adjudged in contempt of this Court and dealt with accordingly for failure to serve as judge in the third circuit and to permit Judge Quinn to serve as presiding judge in the tenth circuit as required by the order of this Court.

In response to the order to show cause defendant, on May 16, 1958, appeared before this Court personally and represented by counsel. At the incoming of Court the motion of the Saginaw County Bar Association to intervene was denied as was defendant's motion for continuance. Defendant thereupon filed and furnished the Court with copies of his answer to the show-cause order. Both his motion and answer admitted the service upon him on May 12, 1958, of the May 9th order and the May 12th show-cause order with affidavit attached. His answer admitted that he had not complied with the May 9th order but continued to hear matters in the tenth cir-

cuit and that he had objected in open court to Judge Quinn's serving as presiding judge therein. Defendant admitted before this Court that he had received the assignment of the court administrator and the May 9th order of this Court, that he knew that thereby he was directed to serve as judge in the third circuit, Judge Quinn was directed to serve during the month as presiding judge in the tenth circuit, and the assignment clerk of the tenth circuit was ordered to perform the functions of his office under the direction and control of Judge Quinn; further, that he, the defendant, in disobedience to the assignment and the order of this Court, failed and refused to serve as judge in the third circuit, continued to sit and hear matters in the tenth circuit and refused in open court to permit Judge Quinn to assume the duties of presiding judge of the tenth circuit. Defendant and his counsel stated before this Court that there were no issues of fact, that the recitals of fact in the order to show cause and attached affidavit were true and correct, and that the only issues defendant desired to raise in answer to the show-cause order were legal challenges to the sufficiency of the proceedings herein and the authority of this Court in the premises. Upon inquiry then made by this Court, defendant personally and through his counsel stated that he still declined to comply with and to obey the May 9th order of this Court to serve as judge in the third circuit.

After hearing duly had before this Court the defendant was on said May 16, 1958, adjudged to be in contempt of this Court, whereupon it was so announced to defendant in open court. He was then reminded by the Court that the arrangement for service by the 2 judges in the circuits other than their own had been arrived at by agreement voluntarily entered into by him for the avowed purpose of instituting measures designed to correct the un-

satisfactory docket situation in the tenth circuit; that in arriving at such agreement, consideration had been given to the dilatory tactics of a few lawyers in the tenth circuit and that it had been concluded that a visiting judge could combat such tactics and effect satisfactory trial schedules with less embarrassment than would be possible for the local judges; that there were approximately 300 cases in the tenth circuit that had been pending for more than 2 years; that certain reports filed with the court administrator by defendant, as required under Court Rule No 78,* stated that there were no cases left undecided by defendant for more than 4 months, but that such reports did not comport with fact, and that it had been necessary in the past to send visiting judges to the tenth circuit to attend to what would have been defendant's current work so that he might devote himself exclusively to rendering overdue decisions and writing opinions in such undecided cases; that despite the less than State average annual case load per judge in the tenth circuit, the pending cases in the tenth circuit which were more than 2 years old represented 27% of the total cases there pending, whereas the average State-wide, in that respect, was 7%; that reports to the court administrator from visiting judges assigned to the tenth circuit and complaints of attorneys therein indicated defendant's failure to address himself industriously to the work of the court; that such visiting judges reported that the assignment of cases in the tenth circuit was so inefficiently conducted that visiting judges were not kept occupied with hearing of cases while there despite the considerable backlog of cases there existing; that the business of the court in the tenth circuit has been inefficiently administered and that it was for that reason that Judge Quinn was assigned

---

* Adopted December 28, 1955; effective March 1, 1956.   344 Mich xiv.—REPORTER.

to serve as presiding judge in the interests of instituting more efficient and effective procedures. This Court then offered defendant the opportunity to purge himself of contempt by agreeing to obey the May 9th order of this Court. He requested a recess to consider the matter, after which, this Court having reconvened, the defendant in open court declined to avail himself of such opportunity and stated that he was determined to persist in disobeying the May 9th order of this Court. Defendant, thereupon, was ordered, in consequence thereof, to pay $250 forthwith to the clerk of this Court and to attend the court administrator to receive another assignment and to receive service of another order of this Court directing him to serve as judge in the third judicial circuit for a period of 4 weeks commencing May 19, 1958. Such assignment was immediately thereafter delivered to the defendant by the court administrator and such order was thereupon served upon defendant. He was admonished by this Court that persistence in his course of defiance of the orders of this Court and particularly of the last-mentioned order would result in further action of this Court to enforce compliance therewith.

Defendant's technical objections to the sufficiency of these proceedings are without substance. Although the affidavit of Judge Quinn was not filed in the office of the clerk nor attached to the order to show cause before its issuance, as hereinbefore noted, this Court had taken judicial notice of defendant's letter of May 8th asserting his intention to disregard the assignment of the court administrator and had likewise been directly informed by Judge Quinn and taken judicial notice of the occurrences in open court (as we properly may do—*Cullen* v. *Voorhies*, 232 Mich 420) in the tenth circuit on May 12th which transpired both before and after service of this Court's May 9th order upon defendant. This

afforded ample foundation for this Court's issuance, on its own motion, of the show cause order. Judge Quinn's affidavit was attached to the original and copies thereof were attached to copies of the order prior to service upon defendant, thus apprising him of the nature and substance of the disobedience charged against him and enabling him to prepare his defense to be presented to this Court 4 days later. Procedural due process was fully observed. On May 16th the defendant, not having been seized upon capias or otherwise forcibly brought into court, voluntarily presented himself before this Court to show cause why he ought not to be adjudged in contempt. In so doing, he waived all irregularities in initiating the proceeding. *In re McHugh,* 152 Mich 505; *Craig* v. *Baird,* 109 F Supp 496.

At the outset of the hearing before this Court defendant's counsel urged the provisions of Michigan Court Rule, No 10, § 2 (1945), and of CL 1948, § 605.3 and § 605.5 (Stat Ann § 27.513 and § 27.515), as entitling him to a continuance and more time to prepare his defense. The mentioned rule governs noticing of motions by parties, but has no application to the Court's issue, on its own motion, of an order to show cause. With respect to the reasonable time to prepare an answer contemplated by the mentioned statutes, it is to be observed that no issue of fact has been raised here and there has been no pretense of any necessity for seeking witnesses or evidence to refute the showing of disobedience to the order of the Court. The defense consisted solely of legal claims with respect to the sufficiency of these proceedings and the validity of this Court's May 9th order, the 3 or 4 days available for that purpose having been reasonable and ample to enable defendant and his counsel to explore and present the relevant law. Nothing has been made to appear to indicate defendant's need for additional time.

Point was made of the fact that Judge Quinn did, after service upon him and defendant of our order of May 9th, assume the duties of presiding judge in the tenth circuit. This does not alter the admitted fact that defendant sought in open court to obstruct him from doing so. As for defendant's point that the May 9th order was served on him at 2:30 p. m. on May 12th, too late to allow him to present himself during court hours on that day in the third circuit and that the order to show cause was served upon him at 10:30 p. m. on that day, suffice it to say that the defendant did not on any of the succeeding days present himself to serve as judge in the third circuit and that at the hearing before us on May 16th, upon invitation extended by this Court before the adjudication of contempt, he declined to do so.

Citing *Lamb* v. *Board of Auditors of Wayne County,* 235 Mich 95, defendant says that the people of the tenth judicial circuit are entitled to his service as judge. To that may be added that they are entitled to efficient and effective judicial service and to courts which discharge their business promptly. In *Lamb* the sole question related to the compensation to which a visiting judge was entitled and this, in turn, depended on whether the language "judges regularly holding court therein," found in Michigan Constitution (1908), art 7, § 12, included visiting judges as relates to the requirement in that section that compensation paid by counties in addition to that paid by the State shall be uniform to the judges regularly holding court therein. Utterly irrelevant to the decision of that question was the dicta (p 98) that "the people are entitled to the service of the judge whom they elect." As will appear from the constitutional and statutory provisions hereinafter to be considered, such right is subject to express and distinct limitations and qualifications which needed

not to be considered or construed in deciding the
*Lamb Case.*

Defendant in this case has presumed to pass upon
and hold invalid the May 9th order of this Court,
as well as the April 28th assignment of the court
administrator, directing him to serve as judge in the
third circuit and Judge Quinn to serve as presiding
judge in the tenth circuit. The 4 days intervening
between service of the show-cause order upon him
and the hearing in this Court having been available
to defendant and his counsel in which to examine the
law, not even a semblance of legal authority for that
position was presented by them to this Court. It
does not comport with our system of administration
of justice that an inferior court shall review the
determinations of this Court. Even though the
propriety or validity of our order be questioned, it
should be obeyed until this Court has vacated it;
and, until such time, this Court has power to punish
disobedience thereof as for contempt. *Rose v.
Aaron,* 345 Mich 613, and cases therein cited.

There is inherent power in the courts, to the full
extent that it existed in the courts of England at the
common law, independent of, as well as by reason of
statute (CL 1948, § 605.1 *et seq.* [Stat Ann § 27.511
*et seq.*]), which is merely declaratory and in affirma-
tion thereof, to adjudge and punish for contempt,
and determination of the issue is not for a jury but
the court. *Langdon v. Wayne Circuit Judges,* 76
Mich 358; *In re Dingley,* 182 Mich 44; *In re Scott,*
342 Mich 614; *Craig v. Baird, supra.* Such inherent
power extends not only to contempt committed in
the presence of the court, but also to constructive
contempt arising from refusal of defendant to com-
ply with an order of the court. *Carroll v. City Com-
mission of Grand Rapids,* 266 Mich 123; *Craig v.
Baird, supra.* Such power, being inherent and a
part of the judicial power of constitutional courts,

cannot be limited or taken away by act of the legislature nor is it dependent on legislative provision for its validity or procedures to effectuate it. *Nichols v. Judge of Superior Court,* 130 Mich 187; *In re White,* 340 Mich 140 (reversed on another point in *In re Murchison,* 349 US 133 [75 S Ct 623, 99 L ed 942]).

To defendant's objections that in these proceedings this Court functions as complainant, prosecutor, jury and judge, that there is an absence of the ancient established course of legal proceedings observed in prosecutions for criminal offenses, and that this has served to deprive defendant of due process,[1] equal protection of the law,[2] right to trial by jury[3] and other rights guaranteed by Federal and State Constitutions, complete and effective answer is found in *In re Merrill,* 200 Mich 244, *Bowman v. Wayne Circuit Judge,* 214 Mich 518, *Ex Parte Merrill,* 245 F 778; and *Green v. United States,* 356 US 165 (78 S Ct 632; 2 L ed 2d 672). These cases recognize the inherent power of courts to punish summarily for contempt for refusal to obey a valid court order and that it comports with due process to do so after adjudication upon proceedings comparable to and no more elaborate than those here employed. Even the dissenting justices in *Green* (p 197) recognized the validity on proceedings even less formal and more summary than those at bar, of conditional imprisonment or punishment to compel a person to obey valid court orders in the future, like here, as distinguished from imprisonment to punish for past disobedience of an order with which compliance is no longer possible in the future.

We have considered the matter of the inherent power of this Court to adjudge defendant in con-

---

[1] See US Const, Am 14; Mich Const (1908), art 2, § 16.—REPORTER.
[2] See US Const, Am 14; Mich Const (1908), art 2, § 1.—REPORTER.
[3] See US Const, art 3, § 2; Mich Const (1908), art 2, § 13.—REPORTER.

tempt for disobedience of its valid order. We come now to defendant's challenge of the validity of and power of this Court to make the May 9th order directing defendant to serve as judge in the third circuit and Judge Quinn to serve in his stead as presiding judge in the tenth circuit during the month. With respect to the wisdom thereof and policy questions involved, there was division of this Court before the order entered. Once it was made by the determination of a majority of this Court, no division remained as to this Court's power to adjudge its violation a contempt and the necessity for doing so, not alone to protect the dignity of this Court but to avert a crippling blow to effective court administration in the Michigan judicial structure and to insure prompt and efficient administration of justice in accord with the popular mandate expressed in the Michigan constitutional and statutory provisions hereinafter to be considered. This Court is unanimous in respect to its constitutional and statutory powers to assign judges from their own circuit to another in the interests of sound judicial administration. With equal unanimity we hold the order of May 9th to be within those powers. Pertinent provisions of Constitution and statute permit no other conclusion.

Michigan Constitution (1908), art 7, § 4, provides:

"The Supreme Court shall have a general superintending control over all inferior courts."

That supervisory power of the Supreme Court extends over the circuit courts. *Kloka* v. *State Treasurer,* 318 Mich 87. It cannot be restricted or removed by legislative action. *Brown* v. *Kalamazoo Circuit Judge,* 75 Mich 274 (5 LRA 226, 13 Am St Rep 438). In 14 Am Jur, Courts, § 265, it is said:

"The power of superintending control is an extraordinary power. It is hampered by no specific rules

or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur, it will be found able to cope with them. Moreover, if required, the tribunals having authority to exercise it will, by virtue of it, possess the power to invent, frame, and formulate new and additional means, writs, and processes whereby it may be exerted. This power is not limited by forms of procedure or by the writ used for its exercise. Furthermore, it is directed primarily to inferior tribunals, and its relation to litigants is only incidental."

For general treatment of the subject, see annotations at 112 ALR 1351 *et seq.*; also, 51 LRA 111. The superintending control conferred by Constitution on this Court is a power separate, independent and distinct from its other original jurisdiction and appellate powers, its purpose being "to keep the courts themselves 'within bounds' and to insure the harmonious working of our judicial system." *State, ex rel. Whiteside,* v. *First Judicial District Court,* 24 Mont 539 (63 P 395); *Hayes Freight Lines* v. *Cheatham* (Okla), 277 P2d 664 (48 ALR2d 1278); *State, ex rel. Auto Finance Co.,* v. *Landwehr,* 229 Mo App 1221 (71 SW2d 144); *State, ex rel. Johnson,* v. *Broderick,* 75 ND 340 (27 NW2d 849). Such power having been conferred by Constitution upon this Court, it also received all the power necessary to make that control and its implementing orders and writs effective. *State* v. *Broderick, supra.* We construe the power so invested in this Court to include the power exercised in this case to assign judges from their own circuit to another in such manner and to such extent as to this Court shall seem appropriate and necessary in order to improve the administration of justice; and we hold that such power may be ex-

ercised by this Court without need for implementing legislation..

Michigan Constitution (1908), art 7, § 8, provides:

"Each circuit judge shall hold court in the county or counties within the circuit in which he is elected, and in other circuits as may be provided by law."

Under CL 1948, § 602.61 (Stat Ann § 27.198), it was provided that judges might be assigned to other circuits than their own by the governor. CL 1948, § 691.212 (Stat Ann § 27.302), provided for such assignment by the State presiding judge. In *Alpena National Bank* v. *Hoey,* 281 Mich 307, jurisdiction of a court presided over by a visiting judge so assigned thereto from another circuit and validity of the proceedings had before him were upheld by this Court despite technical defects inhering in the steps taken to effectuate such assignment.

PA 1952, No 269, as amended by PA 1954, No 162 (CLS 1956, § 692.701 *et seq.* [Stat Ann 1957 Cum Supp § 27.15(1) *et seq.*]), creating the office of court administrator, transferred the powers of the State presiding judge to the court administrator acting under direction of this Court. Section 5 of that act provides:

"The Supreme Court shall have the right to direct and compel a judge of any court named herein to serve as a judge in any other court in which by law he is authorized to act as judge. The authority granted by this section may be exercised by the Supreme Court at its discretion through its direct order, through the court administrator or through the presiding circuit judge of the State of Michigan." (Circuit courts are named therein [section 7] and the judges thereof are authorized by law to act as judge in other circuits than their own.*)

---

* See CL 1948, § 602.61 (Stat Ann § 27.198).—REPORTER.

Section 6 thereof provides, in part:

"The Supreme Court shall have the right to take such action as it may deem proper to facilitate the proper administration of justice, and issue such directives and mandates as in its judgment are necessary and expedient to carry its determinations into effect."

Made a part of the record in this case is the order of this Court of January 13, 1954, empowering the court administrator to assign circuit judges to other circuits, this Court's order of April 15, 1954, authorizing a committee of this Court to advise and direct the court administrator in all matters pertaining to his office, and this Court's order of January 17, 1958, transferring such powers from the committee and conferring them upon the Chief Justice. On April 28, 1958, the Chief Justice directed the court administrator to make the assignments above considered. On May 9, 1958, this Court made its order of like import. In view of the above-noted provisions of Michigan Constitution (1908), art 7, § 8, and PA 1952, No 269, as amended, it was defendant's duty under said assignment and order of this Court to serve and this Court is empowered to compel him to serve as judge in the third judicial circuit.

Defendant suggests in vague terms some right, under the Federal Constitution as well as that of this State, to hold court only in the circuit in which he was elected, and urges that the provisions of article 7, § 4 and § 8, and PA 1952, No 269, as amended and as above construed by this Court, are in contravention of such right and are, therefore, violative of some other provisions of the Michigan Constitution and also of the Constitution of the United States, presumably of its 14th amendment. In *Snowden* v. *Hughes,* 321 US 1, 7 (64 S Ct 397, 88 L ed 497), it was held that "an unlawful denial by State action of a right to State political office is not a

denial of a right of property or of liberty secured by the due process clause," and, further, that it is not a denial of rights guaranteed by the equal protection or privileges and immunities clauses of the United States Constitution, the court saying further (p 11):

"And State action, even though illegal under State law, can be no more and no less constitutional under the Fourteenth Amendment than if it were sanctioned by the State legislature."

Similarly, in *Sprister* v. *City of Sturgis,* 242 Mich 68; *MacDonald* v. *DeWaele,* 263 Mich 233; *Attorney General* v. *Guy,* 334 Mich 694; and *Cicotte* v. *Damron,* 345 Mich 528, it was held that one does not have a contractual right to the public office to which he has been elected. With even less force can it be contended that he has a contractual or any other right under the 14th amendment or other provisions of the Federal or State Constitutions, to perform the duties of such office exclusively in the district or circuit in which he has been elected. The rights of both defendant and of the people of the tenth circuit to have defendant serve therein as judge are subject to the provisions of the Michigan Constitution and statute hereinbefore considered.

We conclude that the assignment of the court administrator and the May 9th order of this Court were valid and within the power of this Court, that defendant's willful disobedience thereof constituted contempt of this Court, that he was duly adjudged in contempt and that, in consequence, it was within the power of this Court to require him to pay $250 to the clerk of this Court and to observe the further order of this Court with respect to future service in the third judicial circuit.

CARR, KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.