# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## CARTER v DTN MANAGEMENT COMPANY

Docket No. 165425. Argued January 11, 2024 (Calendar No. 4). Decided July 29, 2024.

Karen Carter brought an action in the Ingham Circuit Court against DTN Management Company (doing business as DTN MGT), which owned and operated the apartment complex where she lived, after she slipped and fell on an icy sidewalk in the complex on January 20, 2018. Carter filed the complaint, alleging negligence based on premises liability and breach of statutory duties, on April 13, 2021. Defendant moved for summary disposition under MCR 2.116(C)(7), arguing that plaintiff's claim was time-barred because it was not filed within the three-year statutory limitations period applicable to her claims. The trial court, Wanda M. Stokes, J., granted the motion. Plaintiff appealed. The Court of Appeals, PATEL, P.J., and BORRELLO and SHAPIRO, JJ., reversed and remanded for further proceedings, holding that Administrative Order No. 2020-3, which extended certain filing deadlines during the state of emergency declared in response to the COVID-19 pandemic, excluded days from the computation of time under MCR 1.108 and was within the Supreme Court's authority to enter. 345 Mich App 378 (2023). Defendant applied for leave to appeal in the Supreme Court, which granted leave and directed the parties to address whether the Supreme Court had the authority to issue AO 2020-3 and AO 2020-18, which rescinded AO 2020-3 and resumed the normal computation of filing deadlines. 511 Mich 1025 (2023). After hearing arguments, the Supreme Court directed the parties to file supplemental briefs addressing whether *Gladych v New Family Homes, Inc*, 468 Mich 594, 600 (2003), correctly held that statutes of limitations are substantive in nature and, if not, whether *Gladych* should be overturned. 513 Mich 1006 (2024).

In an opinion by Justice BOLDEN, joined by Chief Justice CLEMENT and Justices BERNSTEIN, CAVANAGH, and WELCH, the Supreme Court *held*:

The Supreme Court was within its authority to enter AO 2020-3 and AO 2020-18 under the powers reserved to it under Const 1963, art 6, §§ 4 and 5, and the administrative orders were therefore constitutional. As a result, plaintiff's claim was timely filed, and the trial court improperly granted defendant's motion for summary disposition under MCR 2.116(C)(7).

1. Const 1963, art 6, § 4 gives the Supreme Court general superintending control over all Michigan courts. This power provides the Supreme Court with broad authority to address exigencies that affect the operation of the courts. The Supreme Court also has the authority, under

Const 1963, art 6, § 5, to establish, modify, amend and simplify the practice and procedure in Michigan courts, which it generally accomplishes by issuing administrative orders and promulgating court rules. This authority does not permit the Supreme Court to establish court rules or administrative orders that establish, abrogate, or modify the substantive law because doing so would infringe the Legislature's power.

2. Generally, under MCL 600.5805(2), a plaintiff who seeks damages for personal injury has three years after that injury is sustained during which they may timely sue. MCR 1.108 provides guidance to potential litigants about how statutory limitations periods are to be computed. The computation of a statutory limitations period may also be affected by MCL 600.5856, which is a tolling statute that interrupts the running of the statutory limitations period in certain situations. Statutes of limitations are at the intersection of the shared separation of powers contemplated by Const 1963, art 3, § 2: the Legislature makes the policy determination of the time limit that plaintiffs have for seeking relief in Michigan courts, and the Supreme Court instructs how the time limits will be calculated. In *Gladych*, the Supreme Court held that statutes of limitation are substantive in nature, thus expressly overruling *Buscaino v Rhodes*, 385 Mich 474 (1971), which considered statutes of limitations to be procedural and broadly within the Supreme Court's power to modify.

3. This case was unlike both *Gladych* and *Buscaino*, in which there was a direct conflict between a court rule and the tolling statute. In this case, there was no conflict between the COVID-19 administrative orders and a statute because those orders did not toll the running of statutory limitations periods, but instead affected the counting of the relevant time period for purposes of MCR 1.108(1). AO 2020-3 made clear that any day that fell during the state of emergency declared by the Governor related to COVID-19 was not included for purposes of MCR 1.108(1) and that AO 2020-3 would affect how days would be counted when computing the relevant time period. AO 2020-18, which rescinded AO 2020-3, also explained that the effect of these administrative orders was limited to the computation of time, as did the staff comment to AO 2020-18. Affecting the computation of days by administrative order falls within the Supreme Court's authority to modify, amend, and simplify the practice and procedure in all courts of this state under Const 1963, art 6, § 5. MCR 1.108(1) works in concert with statutes of limitations to guide all parties in the state about when to timely file claims by, for example, specifying that a party need not file a claim on a weekend, holiday, or during a court closure. AO 2020-3 similarly explained that the state of emergency enacted in response to COVID-19 was an act or event that was to be not included in computing a period of time prescribed by the statutes of limitations governing civil and probate cases. Insofar as MCR 1.108(1) was a constitutional exercise of the Supreme Court's authority under Const 1963, art 6, § 5, the Court's issuance of AO 2020-3 and AO 2020-18 was merely an extension of that constitutional authority. The distinction between the computation of time, which is a constitutional exercise of judicial power over practice and procedure, and tolling, which is considered to be substantive law within the province of the Legislature under *Gladych*, is that computation of time affects all possible litigants, whereas tolling relates to one party's specified actions relative to the other. Through their words and effect, AO 2020-3 and AO 2020-18 affected the computation of time and were thus constitutional exercises of the Supreme Court's reserved powers under Const 1963, art 6, § 5.

4. The adoption of AO 2020-3 and AO 2020-18 was also a valid exercise of the Supreme Court's reserved power to exert superintending control over all courts under Const 1963, art 6, § 4. Although the exact boundaries of this power as it relates to practice and procedure have not yet been defined, caselaw has established that exercising this power is permissible during exigent circumstances and to ensure the harmonious working of Michigan's judicial system. COVID-19 was an exigent circumstance that required the Supreme Court's action to safeguard the courts, and adopting the administrative orders was therefore authorized by Const 1963, art 6, § 4. At the time AO 2020-3 and AO 2020-18 were effectuated, this Court unanimously and without dissent agreed that the powers were reasonable and necessary for the administration of justice. The same day that AO 2020-3 was enacted, an executive order instituted a statewide travel ban that did not permit travel throughout Michigan unless it was for a specified purpose, which did not include filing lawsuits. For litigants or their attorneys without access to electronic filing, COVID-19 would have entirely compromised their access to justice by holding the public health crisis, and its corresponding regulatory restrictions, against them unless the Supreme Court exercised its superintending control to ensure that access was protected. Beyond filing concerns, COVID-19 might have affected attorneys' ability to communicate with clients to gather information necessary to organize and file complaints. In sum, AO 2020-3 and AO 2020-18 were time-limited responses to an exigency of unprecedented proportion, and the orders uniformly treated all potential litigants the same to ensure that they received the same computation of time regardless of whether they could access a courthouse or electronic filing system. Therefore, AO 2020-3 and AO 2020-18 were proper exercises of the Supreme Court's reserved powers under Const 1963, art 6, § 4.

5. Plaintiff's injury occurred on January 10, 2018. March 10, 2020, was the effective date of AO 2020-3. On that date, plaintiff had 10 months left to file a timely lawsuit. The days from March 10, 2020, through June 19, 2020, were not included for purposes of MCR 1.108(1) under AO 2020-3. On June 20, 2020, the computation of time for her filing resumed pursuant to AO 2020-18, giving her the same number of days to submit her filing on June 20, 2020, as she had when the exclusion went into effect on March 23, 2020. Therefore, on June 20, 2020, she had 10 months—or until April 20, 2021—to file her lawsuit. Because plaintiff filed her lawsuit on April 13, 2021, her filing was timely, and the trial court improperly granted defendant's motion for summary disposition under MCR 2.116(C)(7).

Court of Appeals judgment affirmed; case remanded to the Ingham Circuit Court for further proceedings.

Justice VIVIANO, joined by Justice ZAHRA, dissenting, disagreed with the majority and the Court of Appeals that the administrative orders were within the Supreme Court's constitutional authority. He would have reaffirmed the holding in *Gladych* that statutes of limitations are substantive in nature because they represent policy decisions rather than matters of mere court administration, and he noted that the majority's holding had significantly undermined *Gladych*'s precedential value. Given that statutes of limitation are substantive, the administrative orders were outside the Supreme Court's authority to regulate practice and procedure under Const 1963, art 6, § 5 because they encroached on the Legislature's authority to create and amend substantive law and thus violated the separation of powers. He stated that the majority's conclusion that the orders merely affected the computation of time under MCR 1.108(1) was a mischaracterization that improperly elevated form over substance, given that the practical effect of the orders was to extend

the statutory limitations period by 101 days.  He also disagreed that the administrative orders were valid exercises of the Supreme Court's superintending authority under Const 1963, art 6, § 4, stating that this holding improperly expanded the scope of that authority beyond anything contemplated in the caselaw on which the majority relied, in particular its extension to the exercise of legislative rather than judicial functions.  For these reasons, he would have reversed the judgment of the Court of Appeals.  Because the lower courts did not decide whether equitable tolling was permitted or appropriate in this case, he would have remanded the case to the trial court to address that issue.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 29, 2024

STATE OF MICHIGAN

SUPREME COURT

KAREN CARTER,

        Plaintiff-Appellee,

v                                 No. 165425

DTN MANAGEMENT COMPANY, doing
business as DTN MGT,

        Defendant-Appellant.

BEFORE THE ENTIRE BENCH

BOLDEN, J.

In 2020, a deadly respiratory virus reached pandemic proportions and affected the entire world, including Michigan. During the peak of the pandemic, Michigan declared a state of emergency. Government leaders were required to make difficult decisions to protect public health, safety, and well-being, while ensuring that the branches of government they oversaw functioned amid the unprecedented challenges presented by the pandemic. This Court fulfilled its role by enacting two administrative orders regarding

how the pandemic would affect litigation deadlines.[1]  These orders affected filing deadlines during the pendency of the state of emergency.

Four years later, this Court must now decide whether these administrative orders were constitutional.  Ordinarily, a plaintiff has three years after an injury occurs during which they can file a timely lawsuit to recover damages.  MCL 600.5805(2).  Had the administrative orders never been enacted, there would have been no question that plaintiff's lawsuit was untimely, and that defendant was therefore entitled to summary disposition under MCR 2.116(C)(7).  The crux of this case, then, is to decide whether these administrative orders were enacted within our constitutional authority, because that determines whether the lawsuit was timely filed.  In sum, if they are constitutional, the lawsuit was timely; if not, it wasn't, and the trial court properly granted defendant's summary-disposition motion.

Like the Court of Appeals, we now hold that the administrative orders were constitutional.  *Carter v DTN Mgt Co*, 345 Mich App 378; 5 NW3d 372 (2023).  Thus, we affirm.  In light of this holding, we remand this case to the Ingham Circuit Court for further proceedings not inconsistent with this opinion.

## I.  FACTS AND PROCEDURAL HISTORY
### A.  LEGAL BACKGROUND AND CONTEXT

In early 2020, scientists found that a newly discovered respiratory virus, known as COVID-19, was the cause of a deadly outbreak that would quickly spread throughout the

---

[1] As explained below, this Court also amended one of the two administrative orders.

globe.[2]  See, e.g., U.S. Centers for Disease Control and Prevention, *CDC Museum COVID-19 Timeline* <https://www.cdc.gov/museum/timeline/covid19.html> (accessed May 30, 2024) [https://perma.cc/GUM6-MH2B].  During 2020, COVID-19 rapidly spread throughout the United States, resulting in the death and serious illness of significant numbers of people.  *In re Certified Questions From the US Dist Court, Western Dist of Mich*, 506 Mich 332, 338; 958 NW2d 1 (2020).  It was "one of the most threatening public-health crises of modern times."  *Id*. at 337.  The World Health Organization declared COVID-19 to be a pandemic.  *Id*.; World Health Organization, *WHO Director-General's Opening Remarks at the Media Briefing on COVID-19—11 March 2020* <https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020> (accessed July 10, 2024) [https://perma.cc/Y8MH-CCK3] (explaining the severity of COVID-19 during March 2020, classifying COVID-19 as a pandemic, and stating that "[p]andemic is not a word to use lightly or carelessly").

In response to COVID-19, states of emergency were declared in each of the United States.  See, e.g., National Academy for State Health Policy, *States' COVID-19 Public Health Emergency Declarations* <https://nashp.org/state-tracker/states-covid-19-public-health-emergency-declarations/> (accessed July 11, 2024) [https://perma.cc/M9RQ-4MT9].  This includes Michigan, where Governor Gretchen Whitmer declared a state of emergency here on March 10, 2020.  Executive Order No. 2020-4.

---

[2] Although the virus has been given multiple scientific or colloquial names, the administrative orders at issue in this case used the phrase "COVID-19," so, throughout this opinion, the virus will be referred to only as "COVID-19."

3

Out of concern for how COVID-19 affected our administration of the courts, within two weeks of that emergency declaration, this Court, absent dissent, adopted the first of our three COVID-19-related administrative orders. Administrative Order No. 2020-3; 505 Mich cxxvii (2020). As originally published on March 23, 2020, AO 2020-3 stated:

> In light of the continuing COVID-19 pandemic and to ensure continued access to courts, the Court orders that:
>
> For all deadlines applicable to the commencement of all civil and probate case types, including but not limited to the deadline for the initial filing of a pleading under MCR 2.110 or a motion raising a defense or an objection to an initial pleading under MCR 2.116, and any statutory prerequisites to the filing of such a pleading or motion, any day that falls during the state of emergency declared by the Governor related to COVID-19 is not included for purposes of MCR 1.108(1).[3]
>
> This order is intended to extend all deadlines pertaining to case initiation and the filing of initial responsive pleadings in civil and probate matters during the state of emergency declared by the Governor related to

---

[3] MCR 1.108(1) deals with the computation of time. It explains:

> In computing a period of time prescribed or allowed by these rules, by court order, or by statute, the following rules apply:
>
> (1) The day of the act, event, or default after which the designated period of time begins to run is not included. The last day of the period is included, unless it is a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order; in that event the period runs until the end of the next day that is not a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order.
>
> (2) If a period is measured by a number of weeks, the last day of the period is the same day of the week as the day on which the period began.
>
> (3) If a period is measured by months or years, the last day of the period is the same day of the month as the day on which the period began. If what would otherwise be the final month does not include that day, the last day of the period is the last day of that month. For example, "2 months" after January 31 is March 31, and "3 months" after January 31 is April 30.

COVID-19. Nothing in this order precludes a court from ordering an expedited response to a complaint or motion in order to hear and resolve an emergency matter requiring immediate attention. We continue to encourage courts to conduct hearings remotely using two-way interactive video technology or other remote participation tools whenever possible.

This order in no way prohibits or restricts a litigant from commencing a proceeding whenever the litigant chooses. Courts must have a system in place to allow filings without face-to-face contact to ensure that routine matters, such as filing of estates in probate court and appointment of a personal representative in a decedent's estate, may occur without unnecessary delay and be disposed via electronic or other means. [Available at <https://perma.cc/Q97F-F5KJ>.]

On April 23, 2020, Governor Whitmer issued an executive order explaining that it was "reasonable and necessary to temporarily suspend and toll" all deadlines on civil and probate proceedings, citing AO 2020-3. Executive Order No. 2020-58. On May 1, 2020, AO 2020-3 was amended, again without dissent, to clarify its language. Administrative Order No. 2020-3; 505 Mich cxliv (2020).[4]

On June 3, 2020, Governor Whitmer began rescinding her COVID-19-related executive orders. See, e.g., Executive Order No. 2020-112. Relative to this case, on June 12, 2020, an executive order declared that EO 2020-58 would be rescinded on June 20, 2020, and that normal computation of days in civil and probate cases could begin again on that date. Executive Order No. 2020-122. The same day, we, again without

_____

[4] The first sentence of the final paragraph was amended to add the following underlined language: "This order in no way prohibits or restricts a litigant from commencing a proceeding whenever the litigant chooses, nor does it suspend or toll any time period that must elapse before the commencement of an action or proceeding." AO 2020-3, as amended at 505 Mich cxlv, available at <https://perma.cc/W22B-HCCL>. As the staff comment explained, the amendment was "intended to make the order more consistent with [EO 2020-58]." Id. This particular modification is not interpreted in our analysis and does not affect our constitutional holding; therefore, for the purposes of showing the chronology that best aids the reader, the original language of AO 2020-3 is included in the main text of this opinion.

dissent, notified the public that normal computation of filing days and deadlines would resume, explaining:

> In Administrative Order No. 2020-3, the Supreme Court issued an order excluding any days that fall during the State of Emergency declared by the Governor related to COVID-19 for purposes of determining the deadline applicable to the commencement of all civil and probate case types under MCR 1.108(1). Effective Saturday, June 20, 2020, that administrative order is rescinded, and the computation of time for those filings shall resume. For time periods that started before Administrative Order No. 2020-3 took effect, the filers shall have the same number of days to submit their filings on June 20, 2020, as they had when the exclusion went into effect on March 23, 2020. For filings with time periods that did not begin to run because of the exclusion period, the filers shall have the full periods for filing beginning on June 20, 2020. [Administrative Order No. 2020-18; 505 Mich clviii (2020), available at <https://perma.cc/3RGY-P5MN>.]

A staff comment to AO 2020-18 further explained:

> Note that although the order regarding computation of days entered on March 23, 2020, it excluded any day that fell during the State of Emergency declared by the Governor related to COVID-19, which order was issued on March 10, 2020. Thus, the practical effect of Administrative Order No. 2020-3 was to enable filers to exclude days beginning March 10, 2020. This timing is consistent with the executive orders entered by the Governor regarding the tolling of statutes of limitation. [*Id*. at 505 Mich clviii-clix.]

### B. FACTS AND PROCEEDINGS IN THIS CASE

Plaintiff, Karen Carter, alleges that around 7:40 a.m. on January 10, 2018, while she was walking to her car to leave for work, she slipped and fell on an icy sidewalk at the apartment complex where she was a resident. The fall resulted in injuries to plaintiff's leg that required surgery.

On April 13, 2021, plaintiff sued DTN Management Company, the owner and operator of the apartment complex, raising counts of negligence sounding in premises liability and breach of a statutory duty to keep all common residential areas fit for their intended use under

6

MCL 554.139.[5] Defendant moved for summary disposition under MCR 2.116(C)(7), arguing that plaintiff's claim was time-barred because it was not filed within the three-year statutory period applicable to her claims.[6] The trial court granted defendant's (C)(7) motion.[7]

For the sake of simplifying the procedural complexity of this case, the following time line is helpful:

| Date | Explanation |
| --- | --- |
| January 10, 2018 | Plaintiff sustains injuries, triggering statute of limitations |
| March 10, 2020 | COVID-19 exclusion period begins |
| June 19, 2020 | COVID-19 exclusion period ends |
| June 20, 2020 | Normal computation of time resumes |
| January 11, 2021[8] | Final day to file without COVID-19 exclusion period |
| April 13, 2021 | Plaintiff sues |
| April 20, 2021 | Final day to file with COVID-19 exclusion period |

[5] In the same lawsuit, plaintiff also sued Muns Directional Boring, Inc., the company that provided maintenance for the property where plaintiff fell. Plaintiff and Muns stipulated to dismiss plaintiff's lawsuit as to Muns with prejudice. Muns is no longer a party to this lawsuit.

[6] Defendant subsequently moved for summary disposition under MCR 2.116(C)(10), arguing that even if summary disposition was not proper under MCR 2.116(C)(7), plaintiff failed to present any genuine issues of material fact.

[7] In light of the trial court's grant of summary disposition under MCR 2.116(C)(7), the trial court denied defendant's motion under MCR 2.116(C)(10) as moot. The determination as to MCR 2.116(C)(10) was not appealed and is not part of this opinion.

[8] The parties agree that if the administrative orders did not affect the filing deadline, the statute of limitations would have expired on January 11, 2021, and not on January 10, 2021, because the latter date was a Sunday. See MCR 1.108(1).

Plaintiff appealed as of right. The Court of Appeals reversed, holding that AO 2020-3 excluded days from the computation of time under MCR 1.108 and entering the order was within this Court's authority. *Carter v DTN Mgt Co*, 345 Mich App 378, 388; 5 NW3d 372 (2023).

Defendant applied for leave to appeal in this Court. We granted leave and directed the parties to address "whether this Court possessed the authority to issue Administrative Order Nos. 2020-3 and 2020-18." *Carter v DTN Mgt Co*, 511 Mich 1025 (2023). After hearing arguments, we directed the parties to file supplemental briefing, addressing "(1) whether *Gladych v New Family Homes, Inc*, 468 Mich 594, 600 (2003), correctly held that statutes of limitations are substantive in nature; and, if not (2) whether *Gladych* should be overturned. See *Robinson v City of Detroit*, 462 Mich 439 (2000)." *Carter v DTN Mgt Co*, 513 Mich 1006 (2024). We now resolve the appeal.

## II. ANALYSIS

### A. STANDARD OF REVIEW

This case reaches this Court by way of plaintiff's initial appeal of the trial court's grant of defendant's motion for summary disposition. On appeal, we review grants and denials of summary disposition de novo. *Ray v Swager*, 501 Mich 52, 61-62; 903 NW2d 366 (2017). Substantively, this case concerns a question of our constitutional authority, which is a constitutional question that we also review de novo. *Bauserman v Unemployment Ins Agency*, 509 Mich 673, 686-687; 983 NW2d 855 (2022). Court rules are also interpreted de novo. *Tyler v Findling*, 508 Mich 364, 369; 972 NW2d 833 (2021). To the extent that this case asks us to interpret the administrative orders of this Court for their legal meaning rather than their legal authority, that is also a question of law that we

review de novo.  See *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 553; 640 NW2d 256 (2002) (explaining that "interpretation of a court rule, like a matter of statutory interpretation, is a question of law").  De novo review means we review the legal issues independently without deferring to the legal interpretation of the lower courts.  *Safdar v Aziz*, 501 Mich 213, 217; 912 NW2d 511 (2018).

## B.  SOURCES OF CONSTITUTIONAL AUTHORITY

The authority of each branch of government is subject to constitutional rights, responsibilities, and limitations.  The state Constitution divides the powers of government among its three branches to preserve their independence.  *In re 1976 PA 267*, 400 Mich 660, 662; 255 NW2d 635 (1977).  The separation-of-powers provision of the Michigan Constitution explains: "The powers of government are divided into three branches: legislative, executive and judicial.  No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."  Const 1963, art 3, § 2.  This Court has held that the "separation of powers doctrine does not require so strict a separation as to provide no overlap of responsibilities and powers" among the branches.  *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 296; 586 NW2d 894 (1998); see also *Makowski v Governor*, 495 Mich 465, 482; 852 NW2d 61 (2014) ("[T]he boundaries between these branches need not be 'airtight' ") (citations omitted).  "[A] sharing of power [across the branches] may be constitutionally permissible" so long as the authority exercised by one branch of government "is limited and specific and does not create encroachment or aggrandizement of one branch at the expense of the other[.]"  *Judicial Attorneys Ass'n*, 459 Mich at 297.  In other words,

9

although there is a strict separation of powers, that does not mean that the branches are or could be kept wholly separate and distinct—some powers must be shared. See *Soap & Detergent Ass'n v Natural Resources Comm*, 415 Mich 728, 752; 330 NW2d 346 (1982).

Specific to the role of judicial power within the separation-of-powers doctrine, we have said:

> As a term that both defines the role of the judicial branch and limits the role of the legislative and executive branches, it is clear that the scope of the "judicial power" is a matter of considerable constitutional significance. Given the final authority of the judicial branch to accord meaning to the language of the constitution, the term "judicial power" cannot ultimately be defined by the Legislature any more than "unreasonable searches and seizures" or the "equal protection of the laws" can ultimately be defined by the Legislature.

> The "judicial power," although not specifically defined in the Michigan Constitution, is distinct from both the legislative and executive powers. As former Justice THOMAS COOLEY has written:

>> It is the province of judicial power [] to decide private disputes between or concerning persons; but of legislative power to regulate public concerns, and to make law for the benefit and welfare of the state. [Cooley, A Treatise on the Constitutional Limitations (Little, Brown & Co, 1886) at 92.]

> The "judicial power" has traditionally been defined by a combination of considerations: the existence of a real dispute, or case or controversy; the avoidance of deciding hypothetical questions; the plaintiff who has suffered real harm; the existence of genuinely adverse parties; the sufficient ripeness or maturity of a case; the eschewing of cases that are moot at any stage of their litigation; the ability to issue proper forms of effective relief to a party; the avoidance of political questions or other non-justiciable controversies; the avoidance of unnecessary constitutional issues; and the emphasis upon proscriptive as opposed to prescriptive decision making. [*Nat'l Wildlife Fed v Cleveland Cliffs Iron Co*, 471 Mich 608, 613-615; 684 NW2d 800 (2004), overruled on other grounds by *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 352 (2010)].

Thus, this case requires us to consider whether the administrative power to enter the orders at issue was within the judicial power. Our judicial power is generally thought of as the power to " 'hear and decide controversies, and to make binding orders and judgments respecting them.' " *Johnson v Kramer Bros Freight Lines, Inc*, 357 Mich 254, 258; 98 NW2d 586 (1959) (citation omitted). But beyond that, "the constitutional responsibility to superintend the administration of justice throughout the State" falls on us, and "[t]hat this Court has the inherent power to fulfill [this] mandate cannot be doubted." *Wayne Circuit Judges v Wayne Co*, 383 Mich 10, 20-21; 172 NW2d 436 (1969), superseded 386 Mich 1 (1971).

To answer this question, we look to two constitutional provisions that articulate the powers the Constitution assigns to our branch and, specifically, to our Court. These powers, colloquially, are known as the power of superintending control and the power to regulate practice and procedure.

First, the Constitution has provided that this Court "shall have general superintending control over all courts; power to issue, hear and determine prerogative and remedial writs; and appellate jurisdiction as provided by rules of the supreme court." Const 1963, art 6, § 4. We interpreted a prior version of the power of superintending control by holding that its purpose was to "keep the courts themselves 'within bounds' and to insure the harmonious working of our judicial system." *In re Huff*, 352 Mich 402, 418; 91 NW2d 613 (1958) (quotation marks and citations omitted), interpreting Const 1908, art 7, § 4. Although that provision was amended with the ratification of the 1963 Constitution, we have since interpreted the current version in much the same way: that the power of superintending control provides this Court with broad authority to address exigencies that

affect the operation of the courts. See *In re Probert*, 411 Mich 210, 230; 308 NW2d 773 (1981), quoting *In re Huff*, 352 Mich at 417-418 (" 'The power of superintending control is an extraordinary power. It is hampered by no specific rules or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur, it will be found able to cope with them.' ") (some quotation marks omitted).

Second, the Constitution directs that this Court "shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state." Const 1963, art 6, § 5. "This is generally accomplished by the issuance of administrative orders and the promulgation of court rules." *People v Taylor*, 510 Mich 112, 129 n 11; 987 NW2d 132 (2022). We have previously held that this authority does not permit this Court to establish court rules or administrative orders "that establish, abrogate, or modify the substantive law" because doing so would infringe the Legislature's power. *McDougall v Schanz*, 461 Mich 15, 27; 597 NW2d 148 (1999). However, as we discuss later, the boundary between procedural rules, which this Court is constitutionally empowered to establish, and substantive law, which is generally beyond this Court's authority, is not always immediately apparent. See, e.g., *People v Watkins*, 491 Mich 450, 476; 818 NW2d 296 (2012).

## C. STATUTES OF LIMITATIONS

Statutes of limitations present a time frame during which a plaintiff may bring a lawsuit seeking damages, and after which a claim is untimely and barred. In Michigan,

12

most statutes of limitations are specified in Chapter 58 of the Revised Judicature Act (RJA), MCL 600.5801 *et seq*. As relevant to this case, "[a] person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section." MCL 600.5805(1). Generally, and as applicable here, a plaintiff who seeks damages for personal injury has three years after that injury is sustained during which they may timely sue. MCL 600.5805(2).[9]

This Court has also enacted a court rule to provide guidance to potential litigants about how the statutory limitations period—in this case, three years—is to be computed. We have said:

> In computing a period of time prescribed or allowed by these rules, by court order, or by statute, the following rules apply:
>
> (1) The day of the act, event, or default after which the designated period of time begins to run is not included. The last day of the period is included, unless it is a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order; in that event the period runs until the end of the next day that is not a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order.
>
> (2) If a period is measured by a number of weeks, the last day of the period is the same day of the week as the day on which the period began.

---

[9] There are several statutory exceptions that prescribe different time frames for timely filing of lawsuits based on the personal characteristics of the plaintiff. See MCL 600.5851. There are also different statutes of limitations for different types of lawsuits. See MCL 600.5805(2) through (14). Other statutory exceptions exist elsewhere in the RJA. The parties do not dispute that the applicable time frame in this case is three years or that MCL 600.5805(2) is the applicable statute.

(3) If a period is measured by months or years, the last day of the period is the same day of the month as the day on which the period began. If what would otherwise be the final month does not include that day, the last day of the period is the last day of that month. For example, "2 months" after January 31 is March 31, and "3 months" after January 31 is April 30. [MCR 1.108].

In addition to MCR 1.108, the computation of a statutory limitations period may also be affected by a tolling statute. A tolling statute is a "law that interrupts the running of a statute of limitations in certain situations, as when the defendant cannot be served with process in the forum jurisdiction." *Black's Law Dictionary* (11th ed). MCL 600.5856 is Michigan's tolling statute. It explains:

The statutes of limitations or repose are tolled in any of the following circumstances:

(a) At the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules.

(b) At the time jurisdiction over the defendant is otherwise acquired.

(c) At the time notice is given in compliance with the applicable notice period under section 2912b, if during that period a claim would be barred by the statute of limitations or repose; but in this case, the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given.

Statutes of limitations are at the intersection of the shared separation of powers contemplated by Const 1963, art 3, § 2. See *Judicial Attorneys Ass'n*, 459 Mich at 296. At bottom, they are the legislative determination of "the reasonable period of time given to a plaintiff to pursue a claim" in a court of law that could provide legal relief. *Nielsen v Barnett*, 440 Mich 1, 8; 485 NW2d 666 (1992), citing *Lothian v Detroit*, 414 Mich 160, 165; 324 NW2d 9 (1982). We have stated that the policy rationale for statutes of limitations

include: "the prompt recovery of damages, penalizing plaintiffs who are not industrious in pursuing claims, security against stale demands, relieving defendants' fear of litigation, prevention of fraudulent claims, and a remedy for general inconveniences resulting from delay." *Nielsen*, 440 Mich at 8-9, citing *Lothian*, 414 Mich at 166-167.

The overlapping powers are obvious—the Legislature makes the policy determination of the time limit that plaintiffs have for seeking relief in our courts, and this Court instructs how the time limits will be calculated. It is this overlap that presents the parties' exact dispute—whether this Court had the authority to enter AO 2020-3 and AO 2020-18 or whether those orders are unconstitutional because the Court usurped the authority of the legislative branch by adopting them.

In a case involving the ability of the Legislature to enact evidentiary rules, this Court adopted a new rule seeking to clarify the legislative-judicial separation of powers. *McDougall*, 461 Mich 15. We held that there was a distinction between substantive law and matters of practice and procedure and that " '[i]f a particular court rule contravenes a legislatively declared principle of public policy, having as its basis something other than court administration . . . the [court] rule should yield.' " *Id*. at 30-31, quoting Joiner & Miller, *Rules of Practice and Procedure: A Study of Judicial Rule Making*, 55 Mich L R 623, 635 (1957) (alterations in original).

This is not the first time this Court has considered the overlapping powers of the judicial and legislative branches of the state in the context of statutes of limitations. A few years after deciding *McDougall*, we held that "[s]tatutes regarding periods of limitations

15

are substantive in nature." *Gladych*, 468 Mich at 600.[10] In reaching this holding, *Gladych* expressly overruled this Court's prior approach in *Buscaino v Rhodes*, 385 Mich 474, 480; 189 NW2d 202 (1971), which considered statutes of limitations to be procedural and broadly within this Court's power to modify. *Gladych*, 468 Mich at 595. We reiterated that with statutes of limitations, the court rule controls where a statute concerns a matter that is purely procedural, but the court rule should yield if the statute is based on something other than court administration. *Id*. at 600, citing *McDougall*, 461 Mich at 26-27, 31 (quotation marks and citation omitted).

The specific issue in *Gladych* was whether the running of the statutory limitations period was tolled when the plaintiff made three unsuccessful attempts to serve the defendant before the limitations period lapsed. *Gladych*, 468 Mich at 595-596. We held that the mere act of filing a complaint did not toll the running of a statutory limitations period, but rather MCL 600.5805 and MCL 600.5856 created the threshold requirements for filing lawsuits and tolling the periods of limitations associated with filing. *Id*. at 605. In overruling *Buscaino*, we held that plaintiffs must satisfy the requirements of MCL 600.5856 to toll the running of a statutory limitations period. *Id*.

### III. DISCUSSION

We begin by noting a distinction between this case and our prior cases that have required us to interpret statutes of limitations. This case is unlike both *Gladych* and

---

[10] This holding expressly overruled prior caselaw suggesting that all statutes affecting the admission of evidence were procedural for failing to recognize the distinction between matters of procedure and practice and substantive law explained in *McDougall*, 461 Mich at 26-27.

*Buscaino*, in which the questions were whether the plaintiffs' actions—timely filing a complaint but failing to serve the defendants with notice within the applicable limitations period—were in dispute. *Buscaino*, 385 Mich at 484; *Gladych*, 468 Mich at 607. In those cases, there was a direct conflict between a court rule and the tolling statute, and we were tasked with determining which authority plaintiffs were to follow. See, e.g., *Buscaino*, 385 Mich at 484. Here, there was no such conflict between the COVID-19 administrative orders and a statute because, as the Court of Appeals properly held, AO 2020-3 and AO 2020-18 did not toll statutes of limitations, but instead, they affected the counting of the relevant time period for purposes of MCR 1.108(1).[11] *Carter*, 345 Mich App at 375.

To reach this conclusion, we start by looking at the text of our orders. Our first order made clear that "any day that falls during the state of emergency declared by the Governor related to COVID-19 is not included for purposes of MCR 1.108(1)." AO 2020-3. AO 2020-3 specifically cites MCR 1.108(1), which explains that "[i]n computing a period of time prescribed . . . by statute," "[t]he day of the act, event, or default after which the designated period of time begins to run is not included."[12] In other words, we explained

---

[11] In light of this holding, it is unnecessary for us to address the issues we ordered supplemental briefing about: "(1) whether *Gladych* . . . correctly held that statutes of limitations are substantive in nature; and, if not (2) whether *Gladych* should be overturned." *Carter*, 513 Mich at 1006. We take no position on these issues.

[12] The court rule continues by explaining that

> [t]he last day of the period is included, unless it is a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order; in that event the period runs until the end of the next day that is not a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order. [MCR 1.108(1)].

17

that AO 2020-3 would affect how we "counted [days] when computing the relevant time period." *Carter*, 345 Mich App at 375.

When we rescinded AO 2020-3 with AO 2020-18, we again explained that the effect of the administrative orders was limited to the computation of time. Recall the text of that order, which stated:

> In Administrative Order No. 2020-3, the Supreme Court issued an order excluding any days that fall during the State of Emergency declared by the Governor related to COVID-19 for purposes of determining the deadline applicable to the commencement of all civil and probate case types under MCR 1.108(1). Effective Saturday, June 20, 2020, that administrative order is rescinded, and the computation of time for those filings shall resume. For time periods that started before Administrative Order No. 2020-3 took effect, the filers shall have the same number of days to submit their filings on June 20, 2020, as they had when the exclusion went into effect on March 23, 2020. For filings with time periods that did not begin to run because of the exclusion period, the filers shall have the full periods for filing beginning on June 20, 2020. [AO 2020-18; 505 Mich at clviii].

Breaking this down, our first sentence, again, explains that AO 2020-3 affected MCR 1.108(1). Our second sentence explains that "the computation of time for [affected] filings shall resume." And the remaining clauses explain how the computation of time had been affected during the time periods specified by AO 2020-3 and AO 2020-18. Finally, our staff comment also described AO 2020-3 as "the order regarding computation of days . . . ." *Id.*[13]

---

This provision is not relevant to our analysis because the parties do not raise disputes concerning the last day of the period. The question, rather, is about the "period of time . . . [which] is not included." MCR 1.108(1).

[13] As originally enacted, AO 2020-3 did not use the word "tolling" to describe its actions or effects. The word appeared only in the staff comment to AO 2020-18, which explained, "This timing is consistent with the executive orders entered by the Governor regarding the

The language could not have been clearer. AO 2020-3 and AO 2020-18 affected the computation of days.

Affecting the computation of days by administrative order is well within the judicial power because it falls within our authority to "modify, amend and simplify the practice and procedure in all courts of this state." Const 1963, art 6, § 5. This is precisely what MCR 1.108(1) does, again, as evidenced by its own words, which explain which time "is not included" when "computing a period of time prescribed . . . by statute . . . ." MCR 1.108(1) works in concert with statutes of limitations to guide all parties in the state about when to timely file claims. Just as a party need not file a claim on a weekend, holiday, or during a court closure, in order to timely file a claim that the Legislature otherwise instructs ought to be filed within a day, given MCR 1.108(1), AO 2020-3 explained that the state of emergency enacted in response to COVID-19 was an "act" or "event" which was to be "not included" "in computing a period of time prescribed by" the statutes of limitations

---

tolling of statutes of limitation." AO 2020-18, 505 Mich at clix. Thus, this Court never indicated that AO 2020-3 or AO 2020-18 were tolling the running of statutory limitations periods. Instead, a staff comment, which is not an authoritative construction by the Court, used the term "tolling" in direct reference to the language used in EO 2020-58. That order said, "[I]t is reasonable and necessary to temporarily suspend and toll . . . all deadlines and related timing requirements applicable to the commencement of civil or probate actions and proceedings." EO 2020-58. The language and legal effect of EO 2020-58 is not at issue in this case, and we consider the reference to "tolling of statutes of limitations" in the staff comment to AO 2020-18 to be a mere inconsequential reference to EO 2020-58.

We note that the amended language of AO 2020-3 also made an inconsequential reference to executive orders when it explained, "This order in no way prohibits or restricts a litigant from commencing a proceeding whenever the litigant chooses, nor does it suspend or toll any time period that must elapse before the commencement of an action or proceeding." AO 2020-3, as amended at 505 Mich at cxxviii. Although not relevant to our holding here, our language in fact specified that the effects of our orders were *not* to toll the running of any time period.

19

governing civil and probate cases. MCR 1.108(1). Insofar as MCR 1.108(1) is a constitutional exercise of our authority under Const 1963, art 6, § 5, AO 2020-3 and AO 2020-18 were merely extensions of that constitutional authority.[14]

This goes back to what distinguishes this case from *Gladych* and *Buscaino*. Those cases, again, directly affected the particular plaintiffs' inability to meet statutory criteria necessary to toll the running of their statutory limitations periods. Those cases did not address notice given to all possible litigants across the state about how days falling within statutes of limitations are to be calculated or counted. Again, a "tolling statute" is defined as a "law that interrupts the running of a statute of limitations in certain situations, as when the defendant cannot be served with process in the forum jurisdiction." *Black's Law Dictionary* (11th ed). It is specifically tied to "certain situations" related to the specific parties in a lawsuit, just as Michigan's tolling statute tolls in the situations related to what a plaintiff does relative to filing the complaint, serving the complaint on the defendant, and acquiring jurisdiction over the defendant. See MCL 600.5856. The distinction between

---

[14] We note that no parties are challenging the constitutionality of MCR 1.108(1). Rather, just the opposite. As noted already, even when disputing the constitutionality of AO 2020-3 and AO 2020-18, the parties agree that plaintiff had three years *plus one day* to file her lawsuit because plaintiff's three-year cutoff date fell on a Sunday, which is excluded from the computation of time under MCR 1.108(1).

Just as the calculation of time under MCR 1.108(1) can result in a litigant's having additional days to file their claim, so, too, can the calculation of time under the administrative orders. But this practical addition of time does not transform guidance regarding the computation of time into an amendment of the statute of limitations. The administrative orders do not abrogate or modify MCL 600.5805(1)'s provision that, generally, the limitations period for a personal-injury claim is three years. Instead, it provides that the days during the state of emergency do not count toward that limitations period, just as MCR 1.108(1) declares that the final day of a limitations period will not be counted if it falls on a day the court is closed.

the computation of time—as a constitutional exercise of judicial power over practice and procedure—and tolling—which is considered to be substantive law within the province of the Legislature by *Gladych*—is that computation of time affects all possible litigants, whereas tolling relates to one party's specified actions relative to the other. See, e.g., *Mair v Consumers Power Co*, 419 Mich 74, 83; 348 NW2d 256 (1984) ("The tolling statute's attention to when the defendant is notified of the action against him is consistent with the overall purpose of the statute of limitations. Tolling occurs in situations where the extension of time will not disadvantage the defendant as a result of his unawareness of the need to preserve evidence and prepare a defense. Thus, the tolling statute takes away any harshness that might occur if the plaintiff, in good faith, commenced a suit without having the merits adjudicated and later learned that because of that mistake the statute had run. At the same time, it protects the defendant from the very evils that the statute of limitations is intended to do away with.").

Through their words and effect, therefore, AO 2020-3 and AO 2020-18 affected the computation of time. They were constitutional exercises of our reserved powers under Const 1963, art 6, § 5.[15]

---

[15] This opinion should not be construed as broadly expanding this Court's authority to endorse the possibility that we could issue future administrative orders that would establish new and permanent statutes of limitations as suggested by the dissent's illustration. Rather, this opinion is limited to deciding whether AO 2020-3 and AO 2020-18 were constitutional. We hold that these unanimous administrative orders were time-limited responses to modify the computation of time during the exigent circumstances of COVID-19 that constituted valid exercises of our constitutional authority under Const 1963, art 6, § 5 and Const 1963, art 6, § 4.

Further, we hold that AO 2020-3 and AO 2020-18 were also valid exercises of our reserved power to exert "superintending control over all courts[.]" Const 1963, art 6, § 4. Although the exact boundaries of our power of superintending control as it relates to practice and procedure have not yet been defined, we have previously established that exercising this power is permissible during exigent circumstances. *In re Probert*, 411 Mich at 230, citing *In re Huff*, 352 Mich at 418-419. We have also noted that the power of superintending control is appropriate where necessary to "insure the harmonious working of our judicial system." *In re Huff*, 352 Mich at 418. COVID-19 was an exigent circumstance requiring this Court's action to safeguard our courts, and so § 4 authorized our exercise of this power in adopting the administrative orders.

At the time AO 2020-3 and AO 2020-18 were effectuated, this Court unanimously and without dissent agreed that the powers were reasonable and necessary for the administration of justice. COVID-19 presented an unprecedented, deadly, and widespread public health crisis. See *In re Certified Questions*, 506 Mich at 337. The same day that AO 2020-3 was enacted, an executive order instituted a statewide travel ban that did not permit travel throughout Michigan unless it was for a specified purpose—which did not include filing lawsuits. See Executive Order No. 2020-21. For litigants or their attorneys without access to electronic filing, COVID-19 would have entirely compromised their access to justice by holding the public health crisis, and its corresponding regulatory restrictions, against them—unless this Court exercised its superintending control to ensure that access was protected. Beyond filing concerns, COVID-19 may have affected attorneys' ability to communicate with clients to gather information necessary to organize

and file complaints. This is precisely what AO 2020-3 and AO 2020-18 intended to do and exactly what they accomplished.

AO 2020-3 and AO 2020-18 were time-limited responses to an exigency of unprecedented proportion.[16] They uniformly treated all potential litigants the same to ensure that all potential litigants received the same computation of time regardless of whether they could access a courthouse or electronic filing system. Therefore, they were proper exercises of this Court's reserved powers under Const 1963, art 6, § 4.[17]

---

[16] We cannot overstate the gravity of the situation in which this Court unanimously elected to promulgate AO 2020-3. In a related case, Judge K. F. KELLY eloquently captured the importance of this context, as she explained:

> While the practical effect of AO 2020-3, at its farthest limits, gave litigants an additional 102 days to file their claims, we only know this with the benefit of hindsight. This raises the fundamental issue with the majority's reasoning: it is backward-looking, examining the effect of AO 2020-3 from the benefit of two years of experience and hindsight. However, at the time AO 2020-3 was issued in March 2020, no one knew the breadth of the impact that COVID-19 would have on our court system. Many presumed the pandemic would run its course in a matter of days or weeks. Moreover, and perhaps more importantly, the courts across the state were simply unprepared to immediately facilitate faceless, electronic filings or remote hearings. While the majority observes that Ottawa County was a leader in the move toward electronic filings, the Michigan Supreme Court was, presumably, concerned not only with Ottawa County, but every county and court system within the state. . . . In other words, what of the courts that were not open, or that, for some period of time, could not accept court filings? I must presume that the Supreme Court, when issuing AO 2020-3, was considering those corner cases when crafting the order. [*Compagner v Burch*, ___ Mich App ___, ___; ___ NW3d ___ (June 1, 2023) (Docket No. 359699) (K. F. KELLY, P.J., concurring in part and dissenting in part), slip op at 5-6.]

[17] Plaintiff argued that, in the alternative, this Court should equitably toll the running of the limitations periods given her reliance on the administrative orders. In light of our holdings that AO 2020-3 and AO 2020-18 were constitutional, it is unnecessary for us to consider whether this situation would require application of our equitable-tolling doctrine.

## IV. APPLICATION

Plaintiff's injury occurred on January 10, 2018. March 10, 2020, was the effective date of AO 2020-3. On that date, plaintiff had 10 months left to file a timely lawsuit. The days from March 10, 2020, through June 19, 2020, were "not included for purposes of MCR 1.108(1)." AO 2020-3. On June 20, 2020, "the computation of time for [her] filing[] . . . resume[d]," giving her "the same number of days to submit [her] filing[] on June 20, 2020, as [she] had when the exclusion went into effect on March 23, 2020." AO 2020-18.[18] Therefore, on June 20, 2020, she had 10 months—or until April 20, 2021—to file her lawsuit. She filed her lawsuit on April 13, 2021. Thus, plaintiff timely filed, and the trial court improperly granted defendant's motion for summary disposition under MCR 2.116(C)(7).

---

[18] We recognize that both AO 2020-3 and AO 2020-18 explained that these dates were not included in the computation of time under MCR 1.108(1) because they were associated with the Governor's state of emergency. We further acknowledge that in *In re Certified Questions*, we held that the Governor lacked constitutional authority to extend the state of emergency beyond April 30, 2020. *In re Certified Questions*, 506 Mich at 338. However, this holding affects neither our analysis nor our application. In *In re Certified Questions*, we did not hold that there was no state of emergency beyond April 30, 2020, but we held that the statute under which the Governor based her authority to extend the state of emergency beyond this date was unconstitutional as a violation of the nondelegation doctrine. *Id*. Therefore, this Court has never found that there was no state of emergency during any point in time when the administrative orders were in effect for the purposes of computing days under applicable statutes of limitations. At bottom, this case requires consideration of *our* constitutional authority to exercise superintending control over our courts and our reserved powers over matters of practice and procedure. The state of emergency did not close our courts, but it was, instead, a motivating factor for why we effectuated AO 2020-3 and AO 2020-18. Thus, we used it as a reference point on a time line during which our Court believed the directives of AO 2020-3 were necessary to administer justice.

24

## V. CONCLUSION

In effectuating AO 2020-3 and AO 2020-18, we acted under the powers reserved to us under Const 1963, art 6, §§ 4 and 5. Thus, the administrative orders were constitutional. As a result, plaintiff's claim was timely filed, and the trial court improperly granted defendant's motion for summary disposition under MCR 2.116(C)(7). The Court of Appeals properly understood the constitutionality of these administrative orders and how they affected the computation of days relative to the timeliness of plaintiff's complaint when it reversed the trial court. We affirm the Court of Appeals judgment and remand this case to the Ingham Circuit Court for proceedings not inconsistent with this opinion.

Kyra H. Bolden
Elizabeth T. Clement
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch

STATE OF MICHIGAN

SUPREME COURT

KAREN CARTER,

       Plaintiff-Appellee,

v

No. 165425

DTN MANAGEMENT COMPANY, doing
business as DTN MGT,

       Defendant-Appellant.

_____

VIVIANO, J. (*dissenting*).

The majority holds that our administrative orders issued at the beginning of the COVID-19 pandemic that had the effect of broadly tolling the running of statutory limitations periods by 101 days were valid exercises of both (1) our power to regulate practice and procedure and (2) our power to assume superintending control over all state courts. In so holding, the majority broadly expands our authority beyond that granted to us in the Constitution and tramples over separation-of-powers principles. I would conclude that issuing administrative orders extending deadlines for the initial filing of pleadings was beyond our constitutional authority. However, because the lower courts have not yet addressed plaintiff's alternative argument that equitable tolling is warranted in this case because she relied on our administrative orders, I would remand to the trial court for it to address that issue.

## I.  FACTS AND PROCEDURAL HISTORY

The majority lays out in more detail the relevant facts and procedural history, but for reference, it is helpful to briefly restate a few key points.  On March 10, 2020, in response to the emerging COVID-19 pandemic, Governor Whitmer issued Executive Order No. 2020-4, declaring a state of emergency.  On March 23, 2020, we issued Administrative Order No. 2020-3, which stated, in relevant part:

> In light of the continuing COVID-19 pandemic and to ensure continued access to courts, the Court orders that:

> For all deadlines applicable to the commencement of all civil and probate case-types, including but not limited to the deadline for the initial filing of a pleading under MCR 2.110 or a motion raising a defense or an objection to an initial pleading under MCR 2.116, and any statutory prerequisites to the filing of such a pleading or motion, any day that falls during the state of emergency declared by the Governor related to COVID-19 is not included for purposes of MCR 1.108(1).

> This order is intended to extend all deadlines pertaining to case initiation and the filing of initial responsive pleadings in civil and probate matters during the state of emergency declared by the Governor related to COVID-19. . . .

> This order in no way prohibits or restricts a litigant from commencing a proceeding whenever the litigant chooses.  Courts must have a system in place to allow filings without face-to-face contact to ensure that routine matters, such as filing of estates in probate court and appointment of a personal representative in a decedent's estate, may occur without unnecessary delay and be disposed via electronic or other means. [Administrative Order No. 2020-3, 505 Mich cxxvii (2020), available at <https://perma.cc/Q97F-F5KJ>.]

On April 23, 2020, Governor Whitmer issued Executive Order No. 2020-58, which purported to toll civil and probate filing deadlines, stating in relevant part:

> 1.  Consistent with Michigan Supreme Court Administrative Order No. 2020-3, all deadlines applicable to the commencement of all civil and probate actions and proceedings, including but not limited to any deadline

2

for the filing of an initial pleading and any statutory notice provision or other prerequisite related to the deadline for filing of such a pleading, are suspended as of March 10, 2020 and shall be tolled until the end of the declared states of disaster and emergency.

2. Consistent with Michigan Supreme Court Administrative Order No. 2020-3, this order does not prohibit or restrict a litigant from commencing an action or proceeding whenever the litigant may choose, nor does it suspend or toll any time period that must elapse before the commencement of an action or proceeding.[1]

On June 12, 2020, we issued Administrative Order No. 2020-18, which rescinded

AO 2020-3 effective June 20, 2020, and stated:

In Administrative Order No. 2020-3, the Supreme Court issued an order excluding any days that fall during the State of Emergency declared by the Governor related to COVID-19 for purposes of determining the deadline applicable to the commencement of all civil and probate case types under MCR 1.108(1). Effective Saturday, June 20, 2020, that administrative order is rescinded, and the computation of time for those filings shall resume. For time periods that started before Administrative Order No. 2020-3 took effect, the filers shall have the same number of days to submit their filings on June 20, 2020, as they had when the exclusion went into effect on March 23, 2020. For filings with time periods that did not begin to run because of the exclusion period, the filers shall have the full periods for filing beginning on June 20, 2020. [Administrative Order No. 2020-18, 505 Mich clviii (2020), available at <https://perma.cc/3RGY-P5MN>.]

That same day, Governor Whitmer issued Executive Order No. 2020-122, which rescinded

Executive Order No. 2020-58 effective June 20, 2020.[2] Thus, the purported effect of our

---

[1] On May 1, 2020, we amended AO 2020-3 in response to Executive Order No. 2020-58, see Amended Administrative Order No. 2020-3, 505 Mich cxliv, cxlv (2020), available at <https://perma.cc/W22B-HCCL>, but the new language is not at issue in this case.

[2] EO 2020-122 stated, in relevant part:

Consistent with Michigan Supreme Court Administrative Order No. 2020-18, all deadlines applicable to the commencement of all civil and probate actions and proceedings, including but not limited to any deadline for the filing of an initial pleading and any statutory notice provision or other

administrative orders, issued in conjunction with Governor Whitmer's executive orders, was to extend all filing deadlines by 101 days—the number of days from March 10 to June 19, 2020.

Regarding the present case, plaintiff's claim accrued on January 10, 2018, and had a three-year statutory limitations period under MCL 600.5805(2). She filed her complaint on April 13, 2021, 94 days outside the three-year period. Thus, her complaint was only timely if our administrative orders extending the limitations period were valid.

## II. ANALYSIS

### A. SEPARATION OF POWERS AND THE AUTHORITY OF THIS COURT

Our state government is divided into three coequal branches: the legislative branch, the executive branch, and the judicial branch. Const 1963, art 3, § 2. Our Constitution provides that "[n]o person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." *Id*. This prohibition serves as the bedrock of our separation-of-powers jurisprudence. We have recognized that "an indispensable ingredient of the concept of coequal branches of government is that 'each branch must recognize and respect the limits on its own authority and the boundaries of the authority delegated to the other branches.' " *Employees & Judge of the Second Judicial Dist Court v Hillsdale Co*, 423 Mich 705, 717; 378 NW2d 744 (1985), quoting *United States v Will*, 449 US 200, 228; 101 S Ct 471; 66 L Ed 2d 392 (1980). Thus, " 'the judiciary may not encroach upon the functions of the legislature.' "

---

prerequisite related to the deadline for filing of such a pleading, are tolled from March 10, 2020 to June 19, 2020.

4

*Bartkowiak v Wayne Co*, 341 Mich 333, 344; 67 NW2d 96 (1954), quoting 11 Am Jur, Constitutional Law, § 198, p 900.

At issue in this case is the scope of our judicial power. With limited exceptions not applicable here, "the judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish . . . ." Const 1963, art 6, § 1. In addition to our authority to hear cases and controversies, this Court has administrative authority over practice and procedure under Const 1963, art 6, § 5 and superintending authority over all courts in the state under Const 1963, art 6, § 4.

Our ability to change the law through court rules and administrative orders is limited by the Constitution. Specifically, Const 1963, art 6, § 5 provides, "The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state." This is "a function with which the legislature may not meddle or interfere save as the Court may acquiesce and adopt for retention at judicial will." *McDougall v Schanz*, 461 Mich 15, 27; 597 NW2d 148 (1999) (citation and quotation marks omitted). Relatedly, we are "not authorized to enact court rules that establish, abrogate, or modify the substantive law," as "this Court's constitutional rule-making authority extends *only* to matters of practice and procedure." *Id*. It can be difficult to draw the line between a rule that establishes "practice and procedure" and substantive law. *Id*. at 36. And while this line-drawing must be performed "on a case-by-case basis," *id*., "if a particular court rule contravenes a legislatively declared principle of public policy, having

5

as its basis something other than court administration[,] the court rule should yield," *id*. at 30-31 (cleaned up).[3]

As for our superintending-control authority, Const 1963, art 6, § 4 states, in relevant part, that except for certain limitations not at issue here, "the supreme court shall have general superintending control over all courts . . . ." We have previously explained, "The superintending control conferred by Constitution on this Court is a power separate, independent and distinct from its other original jurisdiction and appellate powers, its purpose being to keep the courts themselves within bounds and to insure the harmonious working of our judicial system." *In re Huff*, 352 Mich 402, 418; 91 NW2d 613 (1958) (citations and quotation marks omitted).[4]

## B. STATUTES OF LIMITATIONS ARE SUBSTANTIVE IN NATURE AND ARE NOT SUBJECT TO OUR AUTHORITY OVER PRACTICE AND PROCEDURE

We have previously held that "[s]tatutes regarding periods of limitation are substantive in nature." *Gladych v New Family Homes, Inc*, 468 Mich 594, 600; 664 NW2d 705 (2003). As a result, to the extent that a statute of limitations contradicts a court rule, the statute controls. *Id*. at 601. The majority takes no position on whether *Gladych* was correct or whether it should be overturned. But because we directed the parties to file supplemental briefs on whether *Gladych* was correctly decided or should be overturned,

---

[3] Although *McDougall* addressed our rulemaking authority specifically, not our ability to issue administrative orders, the conclusion that this Court is not authorized to use its authority over practice and procedure to modify substantive law is logically applicable to administrative orders that purport to govern practice and procedure. Notably, neither party argues that *McDougall*'s framework is inapplicable to this case.

[4] *In re Huff* addressed the superintending-control provision in Const 1908, art 7, § 4, but that language is nearly identical to the language found in our current Constitution.

6

*Carter v DTN Mgt Co*, 513 Mich 1006 (2024), it is worth briefly explaining why I believe *Gladych*'s conclusion is sound. *Gladych* recognized that public policies form the basis for statutes of limitations:

> "By enacting a statute of limitations, the Legislature determines the reasonable period of time given to a plaintiff to pursue a claim. The policy reasons behind statutes of limitations include: the prompt recovery of damages, penalizing plaintiffs who are not industrious in pursuing claims, security against stale demands, relieving defendants' fear of litigation, prevention of fraudulent claims, and a remedy for general inconveniences resulting from delay." [*Gladych*, 468 Mich at 600, quoting *Nielsen v Barnett*, 440 Mich 1, 8-9; 485 NW2d 666 (1992) (citations omitted in *Gladych*).]

Statutes of limitations have their basis in more than just "court administration," and disregarding or substantively amending a statute of limitations would contravene these legislatively declared public-policy principles. *McDougall*, 461 Mich at 30-31.

The majority attempts to distinguish *Gladych* from the present case, contending that the administrative orders we issued in response to the COVID-19 pandemic did not directly conflict with the statute of limitations. Rather than tolling the running of the statutory limitations period, the majority says, AO 2020-23 and AO 2020-18 merely "affected the counting of the relevant time period for purposes of MCR 1.108(1)." *Ante* at 17.

In attempting to make a semantic distinction, the majority elevates form over substance, paying attention only to what the administrative orders purported to do while ignoring their practical effects. The majority is correct that the administrative orders purported to exclude days that fell during the state of emergency issued by the Governor related to COVID-19 from being included in the computation of time under MCR 1.108(1).

7

But the practical effect of the orders "was to toll statutory limitations periods." *Browning v Buko*, 510 Mich 917, 917 (2022) (VIVIANO, J., dissenting).[5]

MCR 1.108(1) establishes how to calculate the last day of a time period. It contains two narrow, limited rules: (1) the day of whatever triggers the running of the time period is not included, and (2) the last day of the period is included, unless that day falls on a day the court is closed (whether that is because the last day falls on a weekend, holiday, or day the court is closed by court order), in which case the period runs to the end of the next day that the court is open. For the most part, MCR 1.108 simply mirrors MCL 8.6, the only difference being that MCL 8.6 does not address court closures due to a court order.[6]

On the other hand, the practical effect of AO 2020-3 and AO 2020-18 was to broadly extend the statutory limitations period by 101 days. See *Compagner v Burch*, ___ Mich App ___, ___; ___ NW3d ___; slip op at 19 (2023) (Docket No. 359699) (contrasting "the minor, procedural effects of MCR 1.108(1) [that] are minimal in nature, insignificant in

---

[5] On this point, I agree with the Court of Appeals that the trial court erred by interpreting AO 2020-3 as only extending filing deadlines that fell within the 101 days that it was in effect. See *Carter v DTN Mgt Co*, 345 Mich App 378, 383-386; 5 NW3d 372 (2023). AO 2020-18 made this clear:

> For time periods that started before Administrative Order No. 2020-3 took effect, the filers shall have the same number of days to submit their filings on June 20, 2020, as they had when the exclusion went into effect on March 23, 2020. For filings with time periods that did not begin to run because of the exclusion period, the filers shall have the full periods for filing beginning on June 20, 2020. [Administrative Order No. 2020-18, 505 Mich at clviii.]

[6] To the extent that MCR 1.108(1) could be said to substantively conflict with MCL 8.6 by extending time periods when the last day of the period would fall on a day a court is closed, MCR 1.108(1) is consistent with our ability to equitably toll the running of statutory limitations periods when courts are completely closed. See Part II(D) of this opinion.

temporal duration, designed purely to ensure that filings are not due when the courts are closed, and can properly be characterized as falling within the 'practice and procedure' bailiwick of the Supreme Court" with the effects of AO 2020-3, which "are vast, indefinite in duration, purporting to apply throughout the entirety of a state of emergency period that was itself wholly undefined, potentially limitless, repeatedly extended, and bounded by nothing beyond the Governor's sole discretion"). And this extension of statutory limitations periods occurred despite the fact that courts remained open during the COVID-19 pandemic. *Id*. at ___; slip op at 18.

Establishing rules for how to calculate time when the last day of a period falls on a day a court is closed is purely an issue of court administration. In order to function, courts must know how to compute time when a filing is received on a day the court is closed.[7] On the other hand, a multimonth extension of statutory limitations periods during a time when courts remained open has its basis in more than mere "court administration" and contravenes the legislatively declared public-policy principles that we have recognized form the basis for such limitations periods.

The label we placed on the action in our administrative orders—purporting to affect only the computation of time under MCR 1.108(1)—is not dispositive. To conclude otherwise would allow this Court to expand its authority beyond that granted in the Constitution by placing a "practice and procedure" label on a substantive change of law.

_____

[7] And, as noted above, MCR 1.108(1) is not inconsistent with MCL 8.6. Although MCR 1.108(1) addresses how to compute time when a court is closed by court order and MCL 8.6 does not address that scenario, the difference between the court rule and statute is minor and addresses a gap in the statute that must be filled in order for courts to compute time in a consistent manner across the state.

Our Constitutional authority is not so broad, as we lack authority to redefine the limits of our judicial power. See *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 640; 684 NW2d 800 (2004) ("The Michigan Constitution grants this Court the 'judicial power'—nothing more and nothing less—and neither the Legislature nor this Court itself possess[es] the authority to redefine these limits."), overruled in part on other grounds by *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349 (2010). In other words, we must look beyond merely how this Court characterizes an administrative order and examine the effects, if any, that an administrative order will have on areas of substantive law. Cf. *Dep't of Licensing & Regulatory Affairs v Lucente*, 508 Mich 209, 268-273; 973 NW2d 90 (2021) (ZAHRA, J., concurring in part and dissenting in part) (contending, in the context of agency law, that courts should look to the substance of an agency's action rather than merely the label the agency has placed on the action).

To illustrate the problem with the majority's analysis, consider the following. This Court could issue an administrative order stating:

> For all deadlines applicable to the commencement of all civil case-types, including but not limited to the deadline for the initial filing of a pleading under MCR 2.110 or a motion raising a defense or an objection to an initial pleading under MCR 2.116, and any statutory prerequisites to the filing of such a pleading or motion, any day that falls during the first 365 days after the claim accrued is not included for purposes of MCR 1.108(1).

Under the majority's analysis, that would be a valid exercise of our administrative authority under Const 1963, art 6, § 5, because it merely relates to computation of time. But the obvious practical effect would be to extend the statutory limitations period for all civil claims by an additional year. It defies common sense that our power under Const 1963, art 6, § 5 could possibly be this broad. The majority pays lip service to *Gladych* but

10

significantly undermines it. The majority says that if an administrative action from this Court is so broad that it "affects all possible litigants" instead of just "specific parties in a lawsuit," *Gladych* is distinguishable. *Ante* at 20-21. It is difficult to see what significant precedential value is left of *Gladych* in light of the majority's holding. Contrary to the majority's conclusion, because the administrative orders at issue conflict with the statute of limitations, which is substantive in nature, issuing the administrative orders was beyond our powers under Const 1963, art 6, § 5, and the administrative orders must yield.

By holding otherwise, the majority disregards Const 1963, art 2, § 3 and our separation-of-powers jurisprudence. Const 1963, art 2, § 3 "strictly forbids a court from exercising legislative power . . . ." *Paige v Sterling Hts*, 476 Mich 495, 518; 720 NW2d 219 (2006). Thus, we "cannot revise, amend, deconstruct, or ignore the Legislature's product and still be true to our responsibilities that give our branch only the judicial power." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 98; 754 NW2d 259 (2008) (cleaned up). Rather, it is "our duty" to comply with the Legislature's will when it has constitutionally expressed a will in a statute. *Tyler v Livonia Pub Schs*, 459 Mich 382, 393 n 10; 590 NW2d 560 (1999). As the United States Supreme Court has observed, these principles apply to statutes of limitations. See, e.g., *Petrella v Metro-Goldwyn-Mayer, Inc*, 572 US 663, 667; 134 S Ct 1962; 188 L Ed 2d 979 (2014) (holding that laches cannot be invoked to preclude a suit brought within a statutory limitations period because "courts are not at liberty to jettison Congress' judgment on the timeliness of [a] suit").

Nothing in Const 1963, art 2, § 3 or our separation-of-powers jurisprudence indicates that the separation of powers should—let alone can—give way during an emergency. Indeed, even "concern that the Legislature may not act quickly or at all . . . is

11

not a proper basis for this Court acting in the name of the Legislature." *People v Gilbert*, 414 Mich 191, 198; 324 NW2d 834 (1982). The concept of " 'separation of powers' was obviously not instituted with the idea that it would promote governmental efficiency" but rather "as a bulwark against tyranny." *United States v Brown*, 381 US 437, 443; 85 S Ct 1707; 14 L Ed 2d 484 (1965).[8] It is our duty to ensure that the branches of government— including our own branch—operate within the constitutionally established boundaries, particularly during times of crisis. See *South Bay United Pentecostal Church v Newsom*, ___ US ___, ___; 141 S Ct 716, 718; 209 L Ed 2d 22 (2021) (statement of Gorsuch, J.) ("Even in times of crisis—perhaps *especially* in times of crisis—we have a duty to hold governments to the Constitution."). We did not hesitate to enforce these principles during the COVID-19 pandemic when we determined that the Governor overstepped her constitutional authority. See *In re Certified Questions*, 506 Mich 332; 958 NW2d 1 (2020).[9]

Particularly concerning is what amounts to, at a minimum, the appearance of collusion between this Court and the Governor to extend statutory limitations periods. Our

---

[8] Although the Supreme Court was speaking about separation of powers at the federal level, we have recognized that "[o]ur state system is modeled after the federal system" and that our division of the government into three branches is " '[i]n harmony with American political theory . . . .' " *Schwartz v Flint*, 426 Mich 295, 305-306; 395 NW2d 678 (1986), quoting *Civil Serv Comm v Auditor General*, 302 Mich 673, 683; 5 NW2d 536 (1942).

[9] The majority attempts to limit its holding as only applying to these administrative orders on the ground that they were a one-time response to the exigent circumstances presented by the COVID-19 pandemic. But that provides cold comfort to those who believe that courts exist to vindicate their constitutional rights even in times of crisis. See *South Bay United Pentecostal Church*, ___ US at ___ (statement of Gorsuch, J.). Regardless, I am not aware of any authority for the notion that separation of powers gives way whenever an emergency of some sort arises.

administrative orders and Governor Whitmer's executive orders were intertwined, referencing each other and working together in an attempt to deviate from statutes of limitations that had been validly enacted by the Legislature. It is improper for one branch to encroach on the functions of another, *Bartkowiak*, 341 Mich at 344, but the effects of an encroachment and the potential deprivation of liberty are exacerbated when two branches work together to encroach on the functions of the third branch. While I do not believe my colleagues and I issued our administrative orders in bad faith, unlike with the legislative process, the public had no ability to observe our discussions and deliberations regarding our administrative orders, nor did they have an ability to provide input on those orders. Even the appearance of this Court's working with the Governor to usurp the Legislature's authority risks eroding public confidence in the judicial system and the functioning of our government as a whole.

For these reasons, I would hold that issuing AO 2020-3 and AO 2020-18 exceeded our authority under Const 1963, art 6, § 5 and violated the separation of powers.

## C. THIS COURT CANNOT CREATE EXCEPTIONS TO STATUTES OF LIMITATIONS THROUGH SUPERINTENDING CONTROL

The majority also holds that the administrative orders were valid exercises of our superintending authority under Const 1963, art 6, § 4. The majority's decision to expand our superintending authority is somewhat perplexing, as no party raised this issue below or in this Court. Rather, the Court of Appeals dedicated a few stray lines to the idea that excluding 101 days from the computation of time under MCR 1.108 falls within our superintending authority. The majority here follows the Court of Appeals' lead, broadly

13

expanding the scope of our superintending authority beyond anything contemplated in the caselaw the majority relies on.

The majority relies on *In re Probert*, 411 Mich 210, 230; 308 NW2d 773 (1981), and *In re Huff*, 352 Mich at 418-419, for the proposition that "we have previously established that exercising this power is permissible during exigent circumstances." *Ante* at 22. But those cases discussed our superintending control over specific judges, not a broad exercise of authority over the entire judiciary with respect to all civil and probate cases. Significantly, *In re Probert* never held that our superintending authority allows us to amend or deviate from legislatively enacted substantive law. On the contrary, *In re Probert* recognized that the purpose of our superintending-control authority is " 'to keep the courts themselves "within bounds" and to insure the harmonious working of our judicial system.' " *In re Probert*, 411 Mich at 229-230, quoting *In re Huff*, 352 Mich at 418 (some quotation marks omitted). We acknowledged the "great breadth of the power":

> " 'The power of superintending control is an extraordinary power. It is hampered by no specific rules or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur, it will be found able to cope with them. Moreover, if required, the tribunals having authority to exercise it will, by virtue of it, possess the power to invent, frame, and formulate new and additional means, writs, and processes whereby it may be exerted. This power is not limited by forms of procedure or by the writ used for its exercise. Furthermore, it is directed primarily to inferior tribunals, and its relation to litigants is only incidental.' " [*In re Probert*, 411 Mich at 230, quoting *In re Huff*, 352 Mich at 417-418 (some quotation marks omitted).]

There are two important takeaways from this passage. First, while our superintending authority is broad and extraordinary, nothing in *In re Probert* indicates that

14

Const 1963, art 6, § 4 expands our judicial power to include any legislative function. In other words, our superintending authority is still bounded by Const 1963, art 3, § 2, and we can only exercise superintending control to the extent that doing so would be a judicial function.[10] Broadly tolling the running of statutory limitations periods is not a judicial function and is not within our judicial power. See *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 390-391; 738 NW2d 664 (2007) (noting that the Revised Judicature Act "comprehensively establish[ed]," among other things, "tolling for civil cases" and that "the Legislature intended the scheme to be comprehensive and exclusive").[11]

---

[10] For example, our current and prior constitutions have provided each house of the Legislature with authority to "judge of the qualifications, elections, and returns of its members . . . ." Const 1963, art 4, § 16; see also Const 1908, art 5, § 15. Although "each house . . . acts in a judicial capacity" under this provision, this Court has held:

> The "general superintending control" which the Supreme Court possesses . . . "over all inferior courts," does not extend to the judicial action of the legislative houses in the cases where it has been deemed necessary to confer judicial powers upon them with a view to enable them to perfect their organization and perform their legislative duties. The houses are not "inferior Courts," in the sense of the constitution, but, as legislative organizations, are vested with certain powers of final decision, for reasons which are clearly imperative. [*People ex rel Drake v Mahaney*, 13 Mich 481, 493 (1865).]

Of course, the administrative orders at issue in this case did not purport to directly exercise superintending control over the Legislature. Nevertheless, *Mahaney* demonstrates that our superintending-control powers are bounded by separation-of-powers principles.

[11] As discussed below, courts may have a limited ability to toll the running of a statutory limitations period as a matter of equity, but whether equitable tolling is appropriate is considered on a case-by-case basis. See *King v Bell*, 378 F3d 550, 553 (CA 6, 2004).

Second, the last sentence of the quoted passage from *In re Probert* demonstrates that issuing the administrative orders was outside the scope of our superintending authority. Unlike when this Court properly exercises superintending control, the actions here were not "directed primarily to inferior tribunals," and the impacts of AO 2020-3 and AO 2020-18 on litigants were far more than "incidental." *In re Probert*, 411 Mich at 230 (citations and quotation marks omitted). That is evident in this very case. The effect of the majority's holding is that the defendant in this case is now subject to potential liability that it would not otherwise have been subject to. Finally, relying on our superintending-control authority to extend the statute of limitations would carry the same separation-of-powers concerns discussed above.

For these reasons, I conclude that issuing AO 2020-3 and AO 2020-18 was not authorized by our superintending-control authority.

## D. EQUITABLE TOLLING

Plaintiff argues that even if this Court did not have authority to issue AO 2020-3, we should apply equitable tolling as to her because she relied on our administrative order to her detriment. The lower courts did not address this issue because the trial court interpreted AO 2020-3 as extending only deadlines that fell within the state of emergency declared by Governor Whitmer, whereas the deadline in this case was well after that period had ended.

In my dissenting statement in *Browning*, I discussed the history of equitable tolling of the running of statutory limitations periods when courts were completely closed or inaccessible during wartime. See generally *Browning*, 510 Mich at 919-921 (VIVIANO, J.,

16

dissenting). This common-law rule does not appear to support our administrative orders, because they were not limited to situations in which the courts were closed. Although I could not locate any Michigan cases discussing wartime court closures, this Court has discussed the interplay between the Court's equity power and statutes negating the application of equity. We have rejected the notion that we "may, under the veil of equity, supplant a specific policy choice adopted on behalf of the people of Michigan by their elected representatives in the Legislature." *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 589; 702 NW2d 539 (2005); see also *id*. at 590 ("A court's equitable power is not an unrestricted license for the court to engage in wholesale policymaking . . . .").

We have recognized, however, that courts possess equitable power, as provided in Const 1963, art 6, § 5. *Devillers*, 473 Mich at 590. We have noted that "such power has traditionally been reserved for 'unusual circumstances' such as fraud or mutual mistake." *Id*. (citation omitted). But such relief must be based on the particular circumstances surrounding the plaintiff's claim. *Id*. at 590 n 65 (citing approvingly our grant of equitable relief in *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 432; 684 NW2d 864 (2004), because it was "was a pinpoint application of equity based on the particular circumstances surrounding the plaintiff's claim; namely, the preexisting jumble of convoluted case law through which the plaintiff was forced to navigate"). See also *Trentadue*, 479 Mich at 406 (observing that "our use of equity in *Bryant* is limited to those circumstances when the courts themselves have created confusion"). Such relief " 'is typically available only if the claimant was prevented in some extraordinary way from exercising his or her rights.' " *Browning*, 510 Mich at 919 (VIVIANO, J., dissenting), quoting 51 Am Jur 2d, Limitation of Actions, § 155, pp 603-604.

17

On the other hand, "a categorical redrafting of a statute in the name of equity violates fundamental principles of equitable relief and is a gross departure from the proper exercise of the 'judicial power.' " *Devillers*, 473 Mich at 590 n 65, quoting Const 1963, art 3, § 2 and art 6, § 1).  See also *Trentadue*, 479 Mich at 406 (observing that, "[p]erhaps most significantly, in *Bryant*, no controlling statute negated the application of equity").

Because the lower courts did not address equitable tolling, in light of my conclusion that our administrative orders are unconstitutional, I would remand this case to the trial court for it to address the issue in the first instance.

### III.  CONCLUSION

I do not question that these administrative orders were well-intentioned at the uncertain time when they were issued—indeed, I voted for them along with the other members of the Court.  In my view, "[t]ime and reflection—which we did not have in abundance when the orders were issued—[has] reveal[ed] that we were wrong." *Browning*, 510 Mich at 922 (VIVIANO, J., dissenting).  As Justice Felix Frankfurter once said, "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v Union Planters Nat'l Bank & Trust Co*, 335 US 595, 600; 69 S Ct 290; 93 L Ed 259 (1949) (Frankfurter, J., dissenting).  That has particular resonance here.  If we are not clear-eyed about our own missteps, this Court as an institution will surely lose credibility when we evaluate—as we must from time to time—whether our coordinate branches have themselves exceeded their constitutional powers.  And unfortunately, the Court's administrative intrusion into the legislative sphere is not an isolated case.[12]

---

[12] See *Browning*, 510 Mich at 922 n 25 (noting that this is not "the only recent instance in which this Court's rulemaking has invaded the legislative sphere.  See Amended

18

I disagree with the majority and the Court of Appeals that our administrative orders extending the deadline for initial filing of pleadings are within our authority to regulate practice and procedure or our authority to assume superintending control over state courts. Rather, our attempt to extend such deadlines encroached upon the Legislature's authority to create and amend substantive law. As a result, the administrative orders violated the separation of powers and were unconstitutional. The majority improperly elevates form over substance by mischaracterizing our orders as merely affecting the computation of days under MCR 1.108(1). For these reasons, I would reverse the judgment of the Court of Appeals. Because the lower courts did not decide whether equitable tolling is permitted or appropriate in this case, I would remand to the trial court for it to address that issue. I respectfully dissent.

David F. Viviano
Brian K. Zahra

---

Administrative Order No. 2020-17, 506 Mich lxxiv, lxxvii (2020) (VIVIANO, J., dissenting) (noting that our Court had, without proper authority, issued rules suspending statutes on landlord-tenant proceedings); see also Amendments of Michigan Court Rules 2.403, 2.404, and 2.405, 508 Mich clxi, clxxv (2021) (VIVIANO, J., dissenting) (noting that changes to our rules on the case evaluation process appeared to put our rules in direct conflict with statutes on the topic).").